Solomon **BLATT, Jr.,** as Executor of the Estate of Solomon Blatt, Plaintiff–Appellant,

v.

**UNITED STATES** of America, Defendant–Appellee.

No. 93–2233.

United States Court of Appeals, Fourth Circuit.

Argued April 12, 1994.

Decided Sept. 7, 1994.

---

**ARGUED:** Thomas English McCutchen, Jr., McCutchen, Blanton, Rhodes & Johnson, Columbia, SC, for appellant. Jonathan Samuel Cohen, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** William R. Taylor, McCutchen, Blanton, Rhodes & Johnson, Columbia, SC, for appellant. Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen, Sally J. Schornstheimer, J. Preston Strom, Jr., U.S. Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MURNAGHAN and Senior Judge HARVEY joined.

## OPINION

NIEMEYER, Circuit Judge:

Solomon Blatt, Jr., as executor of the estate of Solomon Blatt, Sr., his father, paid $155,000 to the IRS in August 1987 in respect of the estate's income taxes due for the tax year that ended April 30, 1987. The actual amount of the tax due had not been computed, and Blatt remitted what he believed in good faith would be an amount sufficient to cover what was owed. A year later, in August 1988, Blatt filed a fiduciary income tax return showing that the estate was entitled to a refund of $49,000 from the $155,000 payment. Shortly thereafter, the IRS refunded the overpayment with interest.

Several years later, when a dispute between Blatt and the IRS over the proper amount of *estate taxes* owed by the estate was settled, adjustments which were made to the basis of assets in the estate caused a reduction of income imputable to the estate. Accordingly, Blatt filed an amended fiduciary *income tax* return in July 1991, seeking an additional $68,782 refund from the $155,000 amount paid in 1987. The IRS denied the claim for the additional refund, citing to section 6511(b)(2)(A) of the Internal Revenue Code which limits the amount of any refund to the amount of taxes paid in the three-year period immediately preceding the refund claim. The IRS claimed that because no taxes were "paid" in the three-year period before July 1991, the $155,000 having been paid in August 1987, no refund was allowable.

Blatt filed suit in the district court asserting a right to the $68,782 refund. On the IRS' motion, the district court entered summary judgment in favor of the IRS, and this appeal followed.

Blatt contends that the $155,000 check sent to the IRS in 1987 was not a payment of taxes but a "deposit" made with the IRS and that taxes were not actually "paid" until the fiduciary income tax return was filed in August 1988. Blatt argues that only when he filed the return showing that $106,000 in taxes were due did he actually pay the taxes. Since the filing of the return in 1988 was within the three-year period before his July 1991 refund claim, his refund would be limited, he argues, by the $106,000 amount then paid and not by zero, as the IRS maintained.

The viability of Blatt's refund claim thus turns on the single issue of whether the $155,000 payment to the IRS in August 1987 was a "payment of taxes" or, as maintained by Blatt, a "deposit."

### I

The facts in the record are not disputed. Blatt's father died on May 14, 1986, in Barnwell County, South Carolina, and Blatt was appointed executor of his estate. As executor, Blatt was required to file a fiduciary income tax return for the period from the

date of his father's death through April 30, 1987. The return was due to be filed on August 15, 1987. Because of legitimate distractions, Blatt was unable to complete the fiduciary tax return by August 15, 1987. Instead of filing a return, Blatt consulted with his accountant and decided to make "substantial deposits" to "cover the total amounts due." He acknowledged that he did not know what amount was due, but he "wanted to make a good faith showing in the amounts [he] remitted." Accordingly, on August 13, 1987, he sent the IRS a $155,000 check marked, "Paid Internal Revenue Service for Fiduciary returns for Solomon Blatt Sr. deceased," but he did not seek an extension of time for filing the fiduciary return. When, a year later, Blatt computed the taxes and filed his fiduciary income tax return, he claimed a refund of over $49,000, representing the difference between the $155,000 advanced in 1987 and the $106,000 owing. The IRS paid the refund with interest on September 26, 1988.

About two years later, following an IRS examination of the estate's *estate tax* return, which had also been filed earlier in 1988, the IRS concluded that the estate's interest in Solomon Blatt, Sr.'s law partnership had been understated and that the estate therefore owed additional estate taxes and penalties. Following the filing of a protest, the parties agreed to resolve the issue through a settlement agreement in which the estate agreed to pay slightly more than $100,000 in additional taxes and penalties. The settlement, which was reached in July 1991, caused an increase in the estate's basis of its interest in the law partnership and, consequently, reduced the amount of taxable income realized from the sale of that partnership interest. Blatt therefore filed an amended fiduciary income tax return in July 1991 seeking an additional refund of $68,782. The IRS denied the refund based on I.R.C. § 6511(b)(2)(A).[1]

## II

Blatt seeks to avoid the harsh result required from application of I.R.C. § 6511, arguing that the $155,000 check sent in 1987 was not the payment of taxes; rather, he contends, the estate's income taxes were paid in 1988 when the return was filed, showing that the estate owed $106,000. By this interpretation, the claim for a refund made less than three years later is limited only by the $106,000 amount. The earlier $155,000 payment, he argues, was merely a remittance or a deposit.

It is settled that a mere remittance to the IRS or a payment of a deposit to the IRS does not necessarily amount to the payment of taxes, even if the sum is expected to be used for taxes that might later become due. *See Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). In *Rosenman*, the taxpayer paid a sum to the IRS under protest before any tax assessment was made, solely for the purpose of avoiding penalties and interest. Largely because the IRS placed the money in a non-interest bearing "suspense account" from which money was later drawn to pay tax obligations, the remittance was held to constitute a deposit, and not a payment of taxes. Explaining its holding, the Supreme Court stated:

> The government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. *They were set aside, as we have*

---

1. The pertinent portions of I.R.C. § 6511 provide:

   (a) *Period of limitation on filing claim.*—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed....

   \*   \*   \*   \*   \*   \*

   (b) *Limitation on allowance of credits and refunds.*—

   \*   \*   \*   \*   \*   \*

   (2) *Limit on amount of credit or refund.*—

   (A) Limit where claim is filed within 3–year period.—If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

*noted, in special suspense accounts established for depositing money* received when no assessment is then outstanding against the taxpayer. The receipt by the government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. *Money in these accounts is held not as taxes duly collected are held but as a deposit* made in the nature of a cash bond for the payment of taxes thereafter found to be due.

*Id.* at 662, 65 S.Ct. at 538 (emphasis added).

On the other hand, a payment sent to the IRS in response to an assessment or to discharge all or part of an existing tax liability constitutes the payment of taxes. *See Ewing v. United States,* 914 F.2d 499 (4th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991). Rejecting the notion that any payment to the IRS before an assessment is made can only constitute a deposit, we noted in *Ewing* that the timing of an assessment, if any, is only one factor that may be considered. Instead, we held that "a payment [of taxes] results from the *remittance by a taxpayer concomitant with the recognition of a tax obligation* whether by filing with a return, resolution of a dispute by an agreement, ... or otherwise." *Id.* at 504 (emphasis added). The question is one of intent which may be determined from the circumstances, such as when the tax liability was created, the taxpayer's purpose in remitting the money, and how the IRS treated the payment. *Id.* at 503. The fact that the amount of a tax liability has not precisely been computed does not, however, determine the nature of the payment.

An additional factor that may be considered in determining the intent of the taxpayer is the way that he phrases his request for a return of part of the remittance. While a deposit could be drawn on by the taxpayer for a payment of taxes or, depending on the circumstances, could be recalled upon demand, it could not, by its very nature, be claimed to be an "overpayment" and therefore subject to a refund. *See* I.R.C. § 6402(a). If the taxpayer treats a remittance to the IRS as an "overpayment" for which he seeks a refund, he himself characterizes the remittance as a payment of taxes.

Thus, the essence of the distinction between a deposit and a payment of taxes is derived from the characteristic about the former that it is *paid to be held in escrow* and about the latter that it is *paid to discharge an existing obligation.* These principles were followed both in *Rosenman* and in *Ewing. See also Weigand v. United States,* 760 F.2d 1072, 1074 (10th Cir.1985) (rejecting claim that $25,000 estimated payment made at a time when taxes were payable was a deposit).

With these principles in hand, we turn to an examination of the facts of this case. Blatt filed an affidavit in the district court in which he stated that it was his intention that the $155,000 check serve only as a deposit until the fiduciary tax return was prepared. But nothing in the record indicates that at the time he paid the $155,000 he was aware of the consequence of making a payment as distinguished from giving the IRS a deposit. Indeed, all indications in the affidavit point to the fact that the $155,000 was intended as a payment against taxes then due. He explains in the same affidavit that he agreed with his accountant that he would make a substantial deposit which "[he] felt would cover the total amounts due." He explained further:

> I had no idea what the estate would owe in estate or fiduciary income taxes, but I wanted to make a good-faith showing in the amounts that I remitted. I believed, based on the settlement of the law firm partnership interest, that most of the tax would be owed on the fiduciary return.

It was in this frame of mind that he decided to send the IRS $155,000 in respect to the fiduciary income tax return.[2]

---

2. The relevant portions of Blatt's affidavit read as follows:

> 5. The fiduciary income tax return for the Estate for the period beginning May 14, 1986, and ending April 30, 1987 was due to be filed on or before August 15, 1987 as was the estate tax return, and I realized that as that date neared, it

would be impossible to have those documents ready....

> \* \* \* \* \* \*

> 6. I talked with my accountant and we agreed that we would make substantial deposits on both accounts which I felt would cover the total

In addition, documents in the record show that Blatt instructed the bank in which the estate funds were held to pay $155,000 to the IRS in respect of the fiduciary income tax return and that the bank official issued the check with the notation on it "Paid Internal Revenue Service for Fiduciary returns for Solomon Blatt Sr. deceased." The IRS did not put the money in a "suspense account" or a deposit account. Rather, it treated the $155,000 check as if it were a payment made in connection with an extension obtained to file the return and credited the money to the estate's account. The tax return filed a year later revealed that the $155,000 had, as phrased by the tax form, been "previously paid," and because only $105,966.62 was due, the estate was entitled to a refund of the $49,033.38 "overpayment." Rather than directing the IRS to pay the $106,000 in taxes due by drawing on a previously made deposit, Blatt treated the earlier payment of $155,-000 as an *overpayment* of taxes, for which he was seeking a refund. The IRS not only allowed the refund, but also paid interest on it.

In these circumstances, we conclude that the $155,000 remittance in August 1987 was a payment in respect to taxes owed and did not constitute a deposit. Even though the tax liability was not precisely computed, all agree that the estate of Solomon Blatt owed income taxes at that time. During the year that ended April 30, 1987, the estate had realized substantial amounts of income, creating a tax liability that existed as of the end of the tax year and which was due and owing on the date when the return was required to be filed. *See* I.R.C. § 6151(a); *Manning v. See-*

*ley Tube & Box Co.,* 338 U.S. 561, 565, 70 S.Ct. 386, 389, 94 L.Ed. 346 (1950) (holding that as of the date when a return is required to be filed, "the taxpayer has a positive obligation to the United States: a duty to pay its tax"). The only issue that existed in August 1987 was how much was due. Blatt acknowledged that he and his accountant consulted with each other to determine what amount was necessary to "cover the amount due" and to demonstrate to the IRS that his payment was in good faith.

Blatt urges that because the amount of taxes was not precisely determined until August 1988, taxes could not have been "paid" until then. The lack of a precise calculation of the amount of taxes due in 1987, however, does not indicate that an estimated payment is not a payment of taxes. The date that taxes are deemed paid is fixed by statute to be at that time when the return is prescribed to be filed, and not when the return is actually filed. When a return is required, see I.R.C. § 6012, it must be filed by the date specified by I.R.C. § 6072 ("the 15th day of the fourth month following the close of the fiscal year," in this case by August 15, 1987), and I.R.C. § 6151 creates the tax liability as of the time established for filing the return, "determined without regard to any extension of time for filing the return." Any extension of time obtained for filing the return does not extend the time for payment of the tax due. 26 C.F.R. §§ 1.6081(a) and 1.6081–4(b). Thus, when an extension is sought, it must be accompanied by an amount "properly estimated as tax" due. 26 C.F.R. § 1.6081–4(a)(4). It follows that the amount shown on a return or, if no return is then filed, the

---

amounts due and as it turned out we actually remitted only approximately $50,000.00 less than the returns revealed was due. I talked with my accountant about how much I should forward to the IRS. I had no CPA or tax attorney representing the estate at that time. I had no idea what the estate would owe in estate or fiduciary income taxes, but I wanted to make a good faith showing in the amounts I remitted. I believed, based on the settlement of the law firm partnership interest that most of the tax would be owed on the fiduciary return, so I decided to send $100,000 for the estate tax return and $150,000 for the fiduciary return. As stated above, I had already remitted $10,000 toward the estate tax return so I decided to send half of that amount

or $5,000 with the fiduciary return for a total of $155,000.00.

\* \* \* \* \* \*

10. It was my intention that these checks were to serve as deposits until the estate and fiduciary tax returns were prepared and until I received some indication of what the Estate owed in estate and fiduciary income taxes.

11. Since the estate and fiduciary returns were not filed until almost a year later, (on August 3, 1988), there was no way I could have known what the Estate owed in estate and fiduciary taxes and thus the remittances could not have been for any "payment" of taxes due or calculated taxes or any recognized amounts of taxes due or defined.

amount estimated to be due is payable *at the time fixed for filing a return,* and that a payment of that amount, whether precisely calculated or not, is in either case the payment of tax.

Blatt acknowledges that a fiduciary income tax return was required to be filed on August 15, 1987, and that as of that time he only paid an estimated amount. While he did not properly obtain an extension, the IRS treated the payment as one made with an extension, which is rational in view of the fact that the estimated payment accompanied an estimated payment on the estate tax return and a request for an extension for filing the estate tax return. Surely, Blatt can take no comfort from his failure to file for an extension for filing his fiduciary return. He could argue that the $155,000 payment was made not in connection with an extension only if he were also to agree that the taxes paid in 1988 were late, obligating him to pay interest and penalties. But he never took that position. On the contrary he expected that by paying the $155,000 in 1987 he could avoid interest and penalties. In the scheme of the tax code and the steps taken by Blatt to meet his obligations under the code, it is apparent that he discharged an actual tax obligation on August 15, 1987, by payment of $155,000, and not in August 1988 when he finally filed his return and obtained a refund.

Accordingly, we agree with the district court's conclusion that the $155,000 payment sent to the IRS in August 1987 was not a deposit but a payment of taxes. Since the taxes were paid in 1987 and not 1988 as claimed by Blatt, no taxes were paid within the three-year period before an additional refund claim of $68,782 was made in July 1991. Hence, Blatt is not entitled to any refund claim. *See* I.R.C. § 6511(b)(2)(A).

A ruling that a refund claim is filed too late can be a harsh one. But we are not authorized to provide relief from the clear statutory requirements. *See Ewing,* 914 F.2d at 501 (noting that the task of appellate courts in tax cases "is not that of weighing equities, but of determining technical application of the law"). The United States consents to be sued for tax refunds only when the refund claim is filed in accordance with the Internal Revenue Code. *See* 28 U.S.C. § 1346(a)(1); *Flora v. United States,* 362 U.S. 145, 157, 176–77, 80 S.Ct. 630, 637, 647, 4 L.Ed.2d 623 (1960). In this case I.R.C. § 6511(b)(2)(A), operating as a statute of limitations, applies to limit any refund claim to the amount of taxes paid in the immediately preceding three-year period. Since the refund claim here seeks a return of taxes paid almost four years earlier, it is barred.

The judgment of the district court is

*AFFIRMED.*