**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN J. HULL,
Plaintiff-Appellant,

v.                                                                                    No. 97-1931

UNITED STATES OF AMERICA,
Defendant-Appellee.

WALTER E. ATHERTON; NANCY J.
ATHERTON,
Plaintiffs-Appellants,
                                                                                      No. 97-1932
v.

UNITED STATES OF AMERICA,
Defendant-Appellee.

VAUGHN H. DULLABAUN; EUGENIA M.
DULLABAUN,
Plaintiffs-Appellants,
                                                                                      No. 97-1933
v.

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-96-3921-JFM, CA-96-3922-JFM, CA-96-3927-JFM)

Argued: March 5, 1998

Decided: June 8, 1998

Before WILKINSON, Chief Judge, and WIDENER and
NIEMEYER, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the majority
opinion, in which Chief Judge Wilkinson joined. Judge Widener
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Edward Lee Blanton, Jr., Baltimore, Maryland, for
Appellant. Thomas James Sawyer, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON
BRIEF:** Loretta C. Argrett, Assistant Attorney General, Lynne A.
Battaglia, United States Attorney, Richard Farber, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Section 6532(a) of the Internal Revenue Code requires a taxpayer
who wishes to file a tax refund suit against the United States to do
so within two years after the taxpayer is mailed formal notice of disal-
lowance of the claimed refund or, if the taxpayer waives formal
notice, within two years after the taxpayer's waiver is "filed." At the
request of the Internal Revenue Service Appeals Office in Baltimore,
the taxpayers in these three cases waived formal notice of disallow-
ance and mailed their waivers to the appeals officer in Baltimore. The
appeals officer later sent letters to the taxpayers, indicating that the
taxpayers' files were being closed and referencing receipt of their
waivers. When the taxpayers filed these refund suits within two years
after receiving acknowledgment of their waivers but more than two
years after their waivers were received by the Appeals Office, the dis-

2

trict court dismissed the cases as untimely under I.R.C. § 6532(a)(3). For the reasons that follow, we affirm.

I

On April 15, 1994, John Hull and other similarly situated taxpayers filed claims with the IRS for refunds of taxes paid for the 1990 tax year. The taxpayers claimed that they had been overtaxed for lump sum distributions from the Maryland Retirement System and that they were eligible for 10-year income averaging. After the IRS proposed rejection of the claimed refunds, it assigned an appeals officer in Baltimore to the taxpayers' cases to hear administrative appeals brought by the taxpayers. The appeals officer assigned to the taxpayers' cases informed William Park, the taxpayers' representative, that the IRS had adopted a uniform litigation posture for all Maryland Retirement System cases and that the IRS would not allow any part of the taxpayers' claims. The appeals officer asked Park to waive formal notice of disallowance of the refund claims, which Park agreed to do. He executed waivers on behalf of the taxpayers on December 7, 1994, and mailed them in duplicate to the appeals officer in Baltimore, requesting date-stamped copies in return to show receipt. Park never received date-stamped copies of the waivers, but three weeks later he received form letters from the appeals officer, stating for each taxpayer, "We have closed this case on the basis agreed upon and are sending the case file to the service center. . . . An official notice of full or partial disallowance of claim for refund will not be sent because a waiver, form 2297, was signed." That letter for Hull was mailed on December 29, 1994, and for the other taxpayers, on December 27, 1994.

Form 2297, the waiver form that Park executed on behalf of the taxpayers, includes a waiver of the requirement that notice of claim disallowance be sent to the taxpayers by certified or registered mail and advises persons signing the form that "the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail." The Appeals Office in Baltimore received the taxpayers' waivers in this case on December 8, 1994, as indicated by the date stamp: "RECEIVED 1994 DEC-8 AM 10:54 APPEALS OFFICE BALTIMORE MARYLAND." There is no evi-

3

dence in the record when the waiver forms were actually handed to the appeals officer assigned to the cases.

Because Park did not receive duplicate copies of the waiver forms stamped with the date of receipt and received only the letters advising the taxpayers that the officer was closing the files, Park construed the letters as "both an informal acknowledgment of disallowance and notice that the Waiver was filed on December 29, 1994." He believed therefore that the December 29 date (or December 27 with respect to the taxpayers other than Hull) was the last date when suit could be filed.

In the hope that favorable precedent might be issued by the courts with respect to the substantive issue about pension plan distributions, Park decided, as a strategic matter, to hold off the taxpayers' refund suits for as long as legally possible. On December 11, 1996, more than two years after Park mailed his waivers to the Appeals Office, he sent the taxpayers' files to litigation counsel, indicating that their suits needed to be filed by December 29, 1996. Litigation counsel filed these three actions in the district court on December 17, 1996 -- more than two years after Park mailed the waivers to the Appeals Office, more than two years after the Appeals Office received the waivers, but within two years of when the Appeals Office sent the acknowledgment letters to the taxpayers.

The IRS filed a motion under Federal Rule of Civil Procedure 12(b)(1) in each action, alleging that the suit was untimely under I.R.C. § 6532(a)(3) and that the statute of limitations was jurisdictional. The district court agreed with the IRS, concluding that because a waiver is filed when the taxpayer submits it to the IRS or when the IRS receives it, the refund suits, filed more than two years after their waivers were filed, were untimely. These appeals followed.

II

The taxpayers contend that their refund suits, filed on December 17, 1996, were timely because the two-year statute of limitations did not begin to run until December 27 or 29, 1994, when the appeals officer "who requested the waiver acknowledged[its] receipt and advised taxpayer's representative that `an official notice of full or par-

4

tial disallowance of claim for refund will not be sent because a waiver, Form 2297, was <u>signed</u>.' [Emphasis supplied]." They argue that for purposes of I.R.C. § 6532(a)(3), a document is filed "when it is placed in the custody of the officer appointed by law to receive it." Because there is an absence of any evidence as to when the waivers were actually received by the appeals officer, they maintain that the court can only rely on the December 27 or 29 date when the appeals officer acknowledged receiving the waivers. The taxpayers accept the district court's reliance on the definition of "to file" as meaning "[t]o deliver an instrument or other paper to the proper officer or official for purpose of being kept on file by him," <u>see</u> Black's Law Dictionary 628 (6th ed. 1990), but contend that the district court erred when it relied so heavily on the date of delivery to the Appeals Office and ignored the date of receipt by the appeals officer who requested it.

The United States contends that the waivers were filed on December 8, 1994, when they were received by the Baltimore Appeals Office of the IRS, and that a refund suit filed over two years later was untimely. The United States contends that "[i]n these circumstances, the district court was constrained by Section 6532 to dismiss taxpayers' refund suits for lack of subject matter jurisdiction and it properly did so." The United States argues that the ruling urged by the taxpayer -- that a document is not filed until it is distributed to a specific IRS employee assigned to process the document -- "is unsupported by any authority, is contrary to common sense and would be far more harmful than beneficial to the vast majority of taxpayers."

Section 6532(a) of the Internal Revenue Code, which controls the issue before us, reads in pertinent part:

> (1) . . . No suit or proceeding under section 7422(a) for [refund] . . . shall be begun . . . after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the [refund].

\* \* \*

> (3) . . . If any person files a written waiver of the requirement that he be mailed a notice of disallowance, the 2-year

5

period prescribed in paragraph (1) shall begin <u>on the date such waiver is filed</u>.

I.R.C. § 6532(a)(1), (3) (emphasis added). Accordingly, a tax refund suit must be filed within two years after the Secretary mails notice of disallowance of the refund claim or, if the taxpayer waives formal notice, within two years after such a waiver "is filed." The narrow issue before us, therefore, is when the taxpayers' waivers were "filed," as that term is used in the Code.

Our review of this question is circumscribed by settled principles of sovereign immunity. When courts interpret a statute of limitations for suits against the government, the statute "`must receive a strict construction in favor of the Government.'" <u>Badaracco v. Commissioner</u>, 464 U.S. 386, 398 (1994) (quoting <u>E.I. du Pont de Nemours & Co. v. Davis</u>, 264 U.S. 456, 462 (1924)). "[A]lthough we should not construe such a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended." <u>United States v. Dalm</u>, 494 U.S. 596, 608 (1990) (quoting <u>Block v. North Dakota</u>, 461 U.S. 273, 287 (1983) (quotation marks omitted)).

Moreover, in tax cases and particularly in those involving the construction of limitations statutes, equitable considerations are of limited consequence. <u>See Webb v. United States</u>, 66 F.3d 691, 694 (4th Cir. 1995). Rather, "the task of an appellate court in such cases is `not that of weighing equities, but of determining technical application of the law [consistent] with the well-established view that tax laws are technical and, for the most part, are to be accordingly interpreted.'" <u>Id.</u> (quoting <u>Ewing v. United States</u>, 914 F.2d 499, 501 (4th Cir. 1990)). We have observed that "[a] ruling that a refund claim is filed too late can be a harsh one. But we are not authorized to provide relief from the clear statutory requirements. The United States consents to be sued for tax refunds only when the refund claim is filed in accordance with the Internal Revenue Code." <u>Blatt v. United States</u>, 34 F.3d 252, 257 (4th Cir. 1994) (citations omitted).

With these interpretive principles in hand, we turn to determine what the tax code means when, in § 6532(a), it provides that the two-

6

year period for filing refund suits shall begin"on the date such waiver is filed."

In the absence of a statutory or regulatory definition, a document is "filed," as that term is readily understood, when it is "place[d] among official records as prescribed by law," Merriam Webster's Collegiate Dictionary 434 (10th ed. 1994), or when it is "deliver[ed] . . . to the proper officer or official for the purpose of being kept on file by him as a matter of record and reference in the proper place," Black's Law Dictionary 628 (6th ed. 1990). Thus,"to file" a document with the Internal Revenue Service means to deliver it to the agency so that the agency receives it, and similarly, "to file" with an official is to deliver it to him so that he receives it. Delivery and receipt are the essential components of filing. Thus, "filing" does not incorporate any notion that the document must be executed by the filer, nor does it require that notice be communicated to the filer that a document has been received.

When a document is filed in person, it is filed when the filer delivers it to and it is received by the party with whom it is to be filed. When it is filed by mail, it is likewise filed when the postal service delivers it to and it is received by the party with whom it is to be filed. While mailing may create a presumption of receipt and therefore of filing, the presumption may be rebutted. Moreover, when a paper is filed by mail, the date of filing remains the date which it is received, unless the applicable statute or regulation provides otherwise.

These attributes of "filing" are not disputed by the taxpayers. Indeed, they are well established. See, e.g., Smith v. United States, 96 F.3d 800, 801-02 (6th Cir. 1996); Miller v. United States, 784 F.2d 728 (6th Cir. 1986); Phinney v. Bank of the Southwest Nat'l Ass'n, 335 F.2d 266 (5th Cir. 1964).

The Internal Revenue Code does include a general rule for when a document which is "required to be filed" is deemed to be filed. Section 7502 provides that a document required to be filed may be mailed and the date of the United States postmark "shall be deemed to be the date of delivery." I.R.C. § 7502(a)(1). Section 7502 thus, by deeming a mailing to be "delivery" for documents that must be "filed," equates "delivery" with "filing." While the provision by its terms applies only

7

to documents "required to be filed," thus giving the filer of such documents the benefit of a mailing date as distinguished from a delivery date, the negative inference to be drawn from this section is that documents not "required to be filed," such as the waivers in this case, must be delivered, as opposed to simply mailed, in order to be filed.

Accordingly, we hold that a waiver form is filed as that term is used in I.R.C. § 6532(a)(3) when it is delivered to and received by the person or agency with whom it is to be filed.

In this case, the taxpayers mailed their waivers to the appeals officer on December 7, 1994, and the Appeals Office, to which the waivers were mailed, received them on December 8, as indicated by the mailroom receipt stamp. There is no record of when mailroom personnel physically delivered the waivers to the particular appeals officer's desk. The question thus remains whether, under § 6532, delivery to and receipt by the IRS as an agency constitutes filing. We conclude that the internal routing and delivery of documents within an agency is irrelevant to when a document is filed with the agency, and that it is the agency's receipt that matters, not receipt by the particular employee working on the case.

Both the regulatory framework and policy concerns surrounding § 6532 support this conclusion. The regulations make clear that individual IRS employees are not, as a class, authorized to extend the limitations periods imposed by law. Rather, an extension is effective only if it is "signed by a district director, a director of an internal revenue service center, or an assistant regional commissioner." 26 C.F.R. § 301.6532-1(b). In this case, while the taxpayers may have been dealing with an individual appeals officer within the agency, the taxpayers' claims are against the agency, not the officer, and the officer had no authority under the regulations to affect the statute of limitations for those claims.

Similarly, the regulations governing the application of § 6532(d) bolster the conclusion that filing under § 6532(a)(3) requires delivery to the IRS and not to one of its employees. They provide that after the taxpayer executes a waiver, no "action" by the IRS will operate to "extend the period for bringing suit." 26 C.F.R. § 301.6532-1(d). The clear import of this regulation is to prevent IRS officials from

8

impacting the statute of limitations except as authorized by law. Thus, the appeals officer's sending of the form letters to the taxpayers on December 27 and 29 could not operate to extend the two-year period for bringing suit which was fixed in the statute by the filing date of the taxpayers' waivers.

Policy concerns also require a conclusion that "filing" means delivery to and receipt by the IRS and not by a particular employee. Were the date to be determined by when a particular employee receives the document, extra, arbitrary elements would be introduced into the determination of when a statute of limitations begins to run. Surely, it is not argued that if the particular officer assigned the cases had resigned and was no longer with the agency, the statute of limitations would not begin to run because the waiver was not delivered to the officer. Under our holding, instead of forcing the IRS to prove when a particular appeals officer in charge of a case received a particular waiver and grounding the commencement of suit on the fortuities of internal routing, both the IRS and the taxpayers are assured of the certainty of the IRS's mailroom-stamped dates. Such a holding reinforces § 6532(a)(3)'s purpose of authorizing a waiver of formal notice and substituting for the formal-notice mailing date a clear, fixed date for the commencement of the period for filing any refund suit.

Although the taxpayers maintain that the holding which they urge need not have repercussions on other areas of the tax code, they cannot avoid the necessary implications that would follow from a holding that the date of filing is the date of a particular official's receipt of a waiver. Despite the fact that the filing of a waiver is voluntary, taxpayers in general would be loath to have the date of their submissions to the IRS depend on the IRS's internal routing system. Concerns of fairness to both the government and to taxpayers dictate that both abide by the same rules as to filing. As the United States hypothesized in its brief, would it be fair to a taxpayer, who delivered his refund claim to the IRS on the last day permitted, to be told his claim was late because it did not reach the assigned employee until after the deadline? We think not. See, e.g., Webb , 66 F.3d at 695 ("[A]s statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may

9

be pointed out" (quoting <u>Rothensies v. Electric Storage Battery Co.</u>, 329 U.S. 296, 302 (1946))).

The taxpayers argue that in this case the appeals official asked, as a professional courtesy, that the IRS's formal notice of disallowance be waived, and that the taxpayers elected to accommodate the officer only on the condition that the appeals officer return copies of the waivers with receipt date stamps affixed. They argue therefore that the proper official with whom to file the waivers in these cases was the particular officer being accommodated and not the IRS. This argument, however, would require us to modify the clear statutory and regulatory language to allow IRS employees to reach private arrangements for tolling limitations. As already noted, such arrangements are generally precluded. <u>See</u> 26 C.F.R. § 301.6532-1(b), (d). Moreover, in context, § 6532(a) requires the filing of waivers with the IRS and not with particular employees. The taxpayers' claims are against the agency, not the employee, and authorization to sue the IRS is a legislative grace that is carefully circumscribed by Congress. To allow the scope of a waiver of immunity to be defined by the vagaries of each individual IRS employee would undermine this policy. Moreover, the limitations period for filing suits would thus depend on when a waiver is laid on an employee's desk or when he noticed it, picked it up, or read it. Surely, the taxpayers would not suffer patiently if a document, clearly received by the IRS, was lost before it was delivered to the appeals officer. Would the taxpayers then agree to the adverse consequences of such a rule? Surely not.

Even if we were to recognize the appeals officer as the proper person with whom to file a waiver of notice of disallowance, the evidence in this case indicates that the document was received at the appeals officer's Baltimore office on December 8. While it was date-stamped in the mailroom for the Baltimore Appeals Office, the mailroom was clearly the room through which the appeals officer received his mail. We believe that receipt by the Appeals Office mailroom is a sufficient proxy for receipt by the appeals officer.

To support their contention that they are entitled to rely on the December 27 and 29 letters acknowledging receipt of the waivers, the taxpayers cite to the decisions in <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320 (6th Cir. 1990), and <u>Miller v. United States</u>, 500

10

F.2d 1007 (2d Cir. 1974). Neither decision, however, provides the support which they claim. In both cases, the courts held that, despite the filing of a waiver, the IRS extended the statute of limitations when it subsequently sent the taxpayer a formal notice of disallowance that specifically stated that the statute of limitations commenced with the date of the notice. See Miller, 500 F.2d at 1008-9; Ohio Nat'l Life Ins. Co., 922 F.2d at 322. Thus, the taxpayers in those cases had conflicting dates for limitations purposes and were explicitly told by the IRS that the statute began to run as of the date of the notice and not the date when the waiver was received. Conflicting notices are not before us in these cases. The form letters that the taxpayers claim to have relied on were not formal notices of disallowance and they made no statement about the date on which the waiver was filed or when limitations began to run. Rather, the taxpayers chose to rely on informal communications that only indicated that their files were being closed and acknowledged that their waivers had already been received. The only notice that the taxpayers received in these cases was the substance of the statement contained in the waivers themselves that the time for filing refund suits would begin to run when the waivers were filed. That written advice was consistent with the statutory provision. See I.R.C. § 6532(a)(3).

The taxpayers in these cases consciously elected to use the maximum time allowed by law for filing their refund suits, but in doing so failed to check with the Appeals Office to determine when their waivers were received. Moreover, they chose to overlook the knowledge that waivers mailed on December 7 would presumably be received by the IRS within a few days. Instead of acting on this well-known presumption, they chose, at their own risk, to rely on form letters sent December 27 and 29, which indicated that their files were being closed.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

11

WIDENER, Circuit Judge, dissenting:

I respectfully dissent. Although I do not necessarily disagree with the majority's abstract statement of the law, I am of opinion that the facts of the case require a different application of the law and thus a different result. The majority does not take into account that the government may well have, and probably did, break an agreement entered into with the taxpayers and now seeks court approval of that breach.[1] Therefore, I would vacate the judgment of the district court.

According to the papers submitted in this case, an IRS Appeals Officer provided plaintiffs' representative, William F. Park, with the Form 2297 waiver and "instructed him to return two signed copies of the waiver." The instructions printed on Form 2297 also indicated that the form should be signed in duplicate. Under I.R.C.§ 6532(a)(3), the two-year statute of limitations begins running on the date the Form 2297 waiver is "filed." Park thus fully expected that one of the copies of Form 2297 submitted to the IRS would be date-stamped and returned to him in order to make certain the date on which the waiver was filed. No date-stamped copy of the Form 2297 was ever returned to Park. However, the taxpayers did receive an acknowledgment letter dated December 29, 1994[2] from the IRS indicating that their case had been closed "on the basis agreed upon."

The district court treated defendant's motion as a motion to dismiss. However, the district court considered matters outside of the pleadings in reaching its decision. So, the defendant's motion is viewed as a motion for summary judgment under Fed. R. Civ. Proc. 12(b). As such, the evidence and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

_____

[1] As the majority opinion notes, the forms were sent in duplicate to the Appeals Officer of the IRS, "requesting date-stamped copies in order to show receipt."

[2] The opinion of the district court indicates one letter may have been dated December 27th.

In all events, the cases were filed on December 17, 1996, well within the two year limitations period of December 27th or 29th, 1994.

12

Viewed in the light most favorable to the plaintiffs, the record permits, even if it does not require, a finding of fact that the IRS had entered into an agreement with the taxpayers whereby it would return to them a date-stamped copy of the Form 2297. In addition, the record supports an inference that if a date-stamped copy had been returned, then the taxpayers would have filed their suits within the statutory period. I am of opinion that the government should not be permitted to benefit from its breach of an agreement made with the taxpayers to return a date-stamped copy of Form 2297.

Accordingly, I would vacate the judgment of the district court and allow a jury or other fact finder to determine whether such an agreement was part of the "basis agreed upon," to use the language of the government in its letter of December 29th.

13