United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 9, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
for the Fifth Circuit**

No. 05-60278

BARBARA DEATON,

Petitioner-Appellant,

VERSUS

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

consolidated with No. 05-60292

RONNY DEATON,

Petitioner-Appellant,

VERSUS

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

Appeals from the United States Tax Court

Before GARWOOD, DeMOSS, and BENAVIDES, Circuit Judges.

DeMOSS, Circuit Judge:

Barbara and Ronny Deaton (the "Deatons") appeal a decision of

the United States Tax Court (the "Tax Court") sustaining a finding of the Internal Revenue Service Appeals Office (the "Appeals Office") that the Deatons' 1994 remittance of $125,000--which accompanied their Form 4868 application for an extension of time to file their 1993 tax return--was a "payment," not a "deposit," and that as such, it could not be credited against the Deatons' 1994-1996 tax liabilities because it fell outside the "look-back period" of I.R.C. § 6511(b)(2)(A).

## I. Facts and Proceedings

On April 15, 1994, the deadline for filing a 1993 U.S. Individual Income Tax Return, the Deatons filed a Form 4868 with the Internal Revenue Service (IRS) to extend the time for filing their return. Form 4868, titled "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return," automatically extends a taxpayer's time to file his return if the taxpayer meets certain conditions; however, it does not extend the time to pay tax. *See* Treas. Reg. § 1.6081-4(b) (1993) ("[A]ny automatic extension of time for filing an individual income tax return . . . shall not operate to extend the time for payment of any tax due on such return.").[1] To qualify for a Form 4868 automatic extension of time to file, the Deatons had to "[p]roperly estimate [their] 1993 tax liability using the information available

---

[1]The 1993 version of Form 4868 clearly stated under its title, "This is not an extension of time to pay your tax." I.R.S. Form 4868 (OMB No. 1545-0188) (1993).

to [them], [e]nter [their] tax liability on line 1 of Form 4868, [and] [f]ile Form 4868 by the due date of [their] return." I.R.S. Instructions for Form 4868 (Cat. No. 15385N) (1993); *see also* Treas. Reg. § 1.6081-4(a)(4) (1993) ("Such application for extension must show the full amount properly estimated as tax for such taxpayer for such taxable year . . . ."). Although the Deatons were not required to remit any amount to the IRS with their form, *see* I.R.S. Instructions for Form 4868 (Cat. No. 15385N) (1993) ("If you find you can't pay the full amount shown on line 3, you can still get the extension."),[2] the instructions to Form 4868 indicated that a taxpayer would be liable for interest and possibly a late payment penalty if he submitted less than the full amount of estimated taxes with his form, *id.*

To avoid incurring interest and any late payment penalty, the Deatons submitted to the IRS with their Form 4868 a check in the amount of $125,000, which they calculated as the line 3 "balance due" after deducting payments of $13,883 (in the form of withholdings) from their estimated tax liability of $138,883. Following receipt of the form, the IRS extended the Deatons' deadline for filing their 1993 return by six months; however, the

---

[2]Until 1992, full payment was a condition of receiving an extension; however, the IRS removed that condition in 1992 so that taxpayers who were unable to pay the full amount of estimated taxes could nevertheless obtain an automatic four-month filing extension and relief from late-filing penalties. *See* I.R.S. Notice 92-22, 1993-1 C.B. 305.

Deatons missed the extended deadline and in fact did not file their 1993 return until January 2000, nearly six years after its due date. The Deatons also failed to file timely returns for the tax years 1994, 1995, and 1996.

On January 10, 2000, the Deatons filed delinquent returns for the tax years 1993 through 1996. On their 1993 return, they reported a tax liability of only $88,662, which indicated that they had overestimated their 1993 tax liability on Form 4868 by $50,221. The Deatons requested that this overpayment be carried forward and credited as a payment toward their tax liabilities for the years following 1993.

Shortly after the IRS received the Deatons' 1993-1996 tax returns, it formally assessed the amounts reported as tax on each of the returns. For 1993, the IRS applied the amount already paid by withholding ($13,883) and the April 1994 remittance ($125,000) to the reported tax liability of $88,662. The IRS then posted the resulting overpayment of $50,221 to an "excess collections" account and did not carry it forward on the Deatons' account as a credit for subsequent tax years as the Deatons requested. According to the IRS, the Deatons' credit request was barred by I.R.C. § 6511(b)(2)(A), which limits the amount of a credit or refund claimed by a taxpayer to the amount paid within the "look-back period" under that subsection, that is, the three years (plus the period of any extension of time for filing the return) immediately preceding the filing of the claim. I.R.C. § 6511(b)(2)(A). The

4

Deatons had paid nothing to the IRS within the applicable look-back period, which dated back to July 10, 1996,[3] so their credit was limited to zero.

This litigation arose out of the IRS's attempt to levy the Deatons' property to satisfy their 1994–1996 tax liabilities, which remained unpaid because of the IRS's refusal to apply the 1993 overpayment as a credit in later years. After the IRS issued a Notice of Intent to Levy, the Deatons timely filed a request for a collection due process hearing with the IRS Appeals Office. In their request for a hearing, the Deatons asserted that the 1994 remittance of $125,000 was a "deposit" rather than a "payment," a status that would have protected the remittance from the look-back period for credits and refunds.[4] The Appeals Office rejected the Deatons' assertion, classified their 1994 remittance as a payment, subject to I.R.C. § 6511(b)(2)(A)'s look-back period, and sustained the IRS's proposed levy.

The Deatons were likewise unsuccessful before the Tax Court.

---

[3]Considering the six-month extension the IRS gave the Deatons to file their 1993 return, the look-back period was the three years and six months immediately preceding the date of their claim for a credit, January 10, 2000.

[4]*See* I.R.C. § 6511(b)(2)(A) ("[T]he amount of the credit or refund shall not exceed the portion of the tax *paid* within the period . . . ." (emphasis added)). The distinct treatment of deposits and payments first arose in *Rosenman v. United States*, 323 U.S. 658 (1945), in which the Supreme Court recognized that § 6511's predecessor was not applicable to a deposit even though it would have been applicable to a payment. *Dantzler v. United States*, 183 F.3d 1247, 1249 (11th Cir. 1999).

Although the Tax Court acknowledged the judicially created distinction between a deposit and a payment, the court also recognized a three-way split of authority regarding the treatment of a Form 4868 remittance. Applying its own precedent in *Risman v. Commissioner*, 100 T.C. 191 (1993), which calls for an examination of the facts and circumstances of a case in order to determine whether the taxpayer intended his remittance as a deposit or a payment, the Tax Court reviewed the Deatons' tax records and a letter from their accountant asserting that the $125,000 was a deposit. Finding that the Deatons had failed to demonstrate their contemporaneous intent to treat the remittance as a deposit, the Tax Court sustained the Appeals Office's finding that the Deatons' remittance was a payment made outside the look-back period of § 6511(b)(2)(A) and upheld the Appeals Office's determination that the IRS's proposed levy could proceed. This appeal ensued. Because we agree with the Tax Court that the Deatons' 1994 remittance was a payment, rather than a deposit, we AFFIRM the Tax Court's decision.

## II. Discussion

### A. Standard of Review

The sole issue on appeal is whether the Deatons' 1994 remittance of $125,000 was a payment or a deposit. This is a question of law that we review *de novo*. *San Antonio Sav. Ass'n v. Comm'r*, 887 F.2d 577, 581 (5th Cir. 1989) ("This court has

6

jurisdiction to review the decisions of the tax court 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.' We therefore examine this decision as we do other summary judgment decisions. Because the dispute concerns findings of law, we review on a *de novo* standard." (quoting 26 U.S.C. § 7482 (1982))). The Tax Court's factual findings are reviewed for clear error. *Sandvall v. Comm'r*, 898 F.2d 455, 458 (5th Cir. 1990).

B. Analysis

The Deaton's argue on appeal that the $125,000 remittance that accompanied their Form 4868 application for an extension of time to file was a deposit and that as such, it is not subject to the look-back period of I.R.C. § 6511(b)(2)(A). They ask this Court to reverse the Tax Court's decision and order the IRS to apply their 1993 overpayment as a credit to their 1994–1996 tax liabilities or refund the overpayment to them. The Deatons concede that if the 1994 remittance is properly classified as a payment, the IRS may keep their overpayment because of § 6511(b)(2)(A)'s look-back period.

In deciding this appeal, we must assess the impact of the Supreme Court's recent decision in *Baral v. United States*, 528 U.S. 431 (2000), on this Circuit's longstanding rule that remittances made prior to assessment of a tax are deemed deposits rather than payments. *See Harden v. United States*, 74 F.3d 1237 (5th Cir. 1995)

7

(unpublished); *Ford v. United States*, 618 F.2d 357 (5th Cir. 1980); *Thomas v. Mercantile Nat'l Bank*, 204 F.2d 943 (5th Cir. 1953). The Deatons contend that *Baral* has no effect on their case or on our longstanding rule because it is limited to cases involving remittances governed by the "deemed paid" provision of I.R.C. § 6513(b)[5]--for example, wage withholdings and payments of estimated tax--and they argue that their remittance does not fall under that section. They urge that the proper characterization of their remittance depends on the facts and circumstances associated with it under *Rosenman*, which predates *Baral*. According to the Deatons, the facts and circumstances surrounding their 1994 remittance establish their contemporaneous intent to treat it as a

---

[5]Section 6513(b) states,

Prepaid income tax.--For purposes of section 6511 or 6512--
(1) Any tax actually deducted and withheld at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, be *deemed to have been paid* by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.
(2) Any amount paid as estimated income tax for any taxable year shall be *deemed to have been paid* on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).
(3) Any tax withheld at the source under chapter 3 shall, in respect of the recipient of the income, be *deemed to have been paid* by such recipient on the last day prescribed for filing the return under section 6012 for the taxable year (determined without regard to any extension of time for filing) with respect to which such tax is allowable as a credit under section 1462. For this purpose, any exemption granted under section 6012 from the requirement of filing a return shall be disregarded.
I.R.C. § 6513(b) (emphasis added).

8

deposit, and they assert that Fifth Circuit law at that time supports such a finding.[6] The Commissioner counters that after *Baral*, we should treat remittances accompanying Form 4868 applications as payments as a matter of law; alternatively, the Commissioner argues that the Tax Court correctly ruled under the facts-and-circumstances test that the Deatons' remittance was a payment, not a deposit. Because we have not previously explicitly addressed *Baral*'s impact on our law,[7] we do so here. And for the reasons stated below, we agree that the Deatons' remittance was a payment, not a deposit. However, we decline to adopt a *per se* rule to govern remittances accompanying Form 4868 applications as the Commissioner requests.

1.   Origin of the Deposit-Payment Distinction

The distinction between deposits and payments was first established in *Rosenman*. In that case, the Supreme Court considered whether the predecessor to the current look-back provision barred a claim for refund of estimated estate taxes that the decedent's executors had remitted in response to an absolute deadline, but

---

[6]Because this Circuit treated pre-assessment remittances as deposits at the time the Deatons made their Form 4868 remittance, they argue that it was intended as a deposit under then-current law. This argument fails, as discussed in Part II.B.4.

[7]Although we have decided a deposit-payment case since *Baral*, *see Harrigill v. United States*, 410 F.3d 786 (5th Cir. 2005), we did not discuss *Baral*'s impact on our law in that case because the parties conceded that the *Mercantile National Bank* line of authority, discussed below, was abrogated by *Baral*, *see id.* at 790 n.6.

9

which they strenuously disputed as erroneous. *Rosenman*, 323 U.S. at 659-61. The executors had included a transmittal letter with the remittance, emphasizing that "[t]his payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Id.* at 660 (internal quotation marks omitted). The IRS credited the remittance to a special suspense account, which was created to hold the funds because no taxes had yet been formally assessed against the estate. *Id.* After completing an audit of the return nearly three years later, the IRS formally assessed a deficiency. *Id.* When the executors brought a claim for refund more than three years after the remittance--but within three years of the IRS's formal assessment--the claim was rejected as time barred. *Id.* at 660-61.

In deciding that the taxes were not "paid"--and that the limitations period therefore did not commence--until the tax was actually assessed by the IRS, the Supreme Court specifically considered all of the facts and circumstances surrounding the executors' original remittance, including the executors' intent as stated in the transmittal letter and the IRS's treatment of the remittance once received. *Id.* at 661-63. The Court determined that when the executors submitted the remittance, they "did not discharge what [they] deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever

10

contingencies the future might define." *Id.* at 662. Noting the IRS's deposit of the funds into a suspense account, the Court concluded that "[m]oney in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Id.* The Court ruled that considering the specific facts and circumstances of the case, the remittance was a deposit and that the statute of limitations therefore did not bar the executors' claim for refund. Courts have since read *Rosenman* as creating a facts-and-circumstances test for distinguishing between deposits and payments. *See, e.g.*, *VanCanagan v. United States*, 231 F.3d 1349, 1352-53 (Fed. Cir. 2000); *Moran v. United States*, 63 F.3d 663, 667-68 (7th Cir. 1995); *Blatt v. United States*, 34 F.3d 252, 255 (4th Cir. 1994); *Ewing v. United States*, 914 F.2d 499, 503-04 (4th Cir. 1990); *Fortugno v. Comm'r*, 353 F.2d 429, 435-36 (3d Cir. 1965); *Risman*, 100 T.C. at 197-99. However, this Circuit did not join those courts in their reading of *Rosenman*.

2. Fifth Circuit Law Post-*Rosenman*

Our Circuit first applied *Rosenman* in *Thomas v. Mercantile National Bank*, 204 F.2d 943 (5th Cir. 1953). The *Mercantile National Bank* panel read the *Rosenman* decision as establishing a rule that *any* amount remitted to the IRS prior to a formal assessment of tax is, as a matter of law, a deposit. *Id.* at 944. Citing *Rosenman*, the Court held a claim for refund timely because

11

[u]ntil the Commissioner certified the assessment list . . . there was no deficiency assessment, and no liability on the part of the taxpayer, and consequently nothing to pay. The sum deposited with the Collector . . . was merely an advance deposit to cover additional tax liability expected to arise thereafter. Neither the estate's liability, nor the fact that there was an overpayment could be determined until the deficiency assessment was entered. It would be illogical to hold, as the United States contends, that the statute of limitation began to run against a claim for refund before the deficiency itself came into existence, and before the fact that there was an overpayment, and if so the amount thereof, became ascertainable.

*Id.* *Mercantile National Bank* thus took *Rosenman* beyond its narrow facts and circumstances, which the Supreme Court had specifically emphasized in reaching its decision, and adopted a per se rule that pre-assessment remittances are deposits.

Almost thirty years after *Mercantile National Bank* was decided, a panel of this Court begrudgingly applied its per se rule in *Ford v. United States*, 618 F.2d 357 (5th Cir. 1980), but not without making clear its disagreement with *Mercantile National Bank*'s holding: "Despite our view of Supreme Court precedent, the course taken by our sister circuits, and appropriate tax policy, we are constrained . . . by the bonds of *Thomas v. Mercantile National Bank at Dallas*." *Id.* at 358. After thoroughly discussing the reasons for abandoning the rule and inviting the Court to reconsider it en banc, the panel nevertheless applied *Mercantile National Bank* as binding circuit precedent. *Id.* at 358-61. The motion for rehearing en banc was denied. *Ford v. United States*, 625

12

F.2d 1016 (5th Cir. 1980).

Fifteen years later, the Fifth Circuit again addressed *Mercantile National Bank* in *Harden v. United States,* 74 F.3d 1237 (5th Cir. 1995) (unpublished).[8] The facts of *Harden* are virtually identical to those of the instant case. The Hardens filed Form 4868 for both the 1984 and 1985 tax years, and they submitted remittances with each filing. *Harden*, 74 F.3d at 1237. Several years later, they filed their tax returns for those years, indicating substantially lower tax liabilities than the amounts previously remitted. *Id.* Like the Deatons, the Hardens sought to apply the overpayments as credits for subsequent tax years, but the IRS denied their request as time-barred. *Id.*

The government argued in *Harden* that *Mercantile National Bank* and *Ford* were distinguishable because they did not address taxpayer remittances accompanying Form 4868. According to the government, 26 U.S.C. § 6513 expressly defined such remittances as "payments" of tax for purposes of the statute of limitations, so the remittances were payments, not deposits, as a matter of law. Although the *Harden* panel appreciated the government's "rational and forceful argument," it concluded that it was "bound to the decisions of this court in [*Mercantile National Bank*] and *Ford*. In those cases we

---

[8]Although *Harden* was unpublished, it is considered precedent because it was issued under our former rule concerning unpublished opinions. *See* 5TH CIR. R. 47.5.3 ("Unpublished opinions issued before January 1, 1996, are precedent." (footnote omitted)).

13

held that as a matter of law a remittance forwarded to the IRS before an assessment of tax is to be considered a deposit rather than a payment." *Id.*

3.  Impact of *Baral v. United States*

We now hold that post-*Baral*, we are no longer bound by the *Mercantile National Bank* line of authority. In *Baral*, the Supreme Court explicitly rejected the taxpayer's argument that a tax cannot be "paid" until tax liability is assessed and thereby abrogated the *Mercantile National Bank* rule that a pre-assessment remittance is a deposit rather than a payment. *Baral*, 528 U.S. at 434, 437 ("[T]he Code directly contradicts the notion that payment may not occur before assessment.").[9] The unanimous Court construed the plain language of 26 U.S.C. § 6513(b)(1) and (2) as providing unequivocally that two types of remittances, wage withholdings and payments of estimated income tax, are to be "deemed paid" on the due date of the tax return for the tax year in question, not when formal assessment occurs. *Baral*, 528 U.S. at 434-36. This treatment necessarily precludes the argument that all pre-assessment remittances are deposits, the position that this Court took prior to *Baral* and that the Deatons argue still prevails.

_____

[9]That the *Baral* Court was specifically addressing the Fifth Circuit's position as compared to those of various other circuits supports a finding of abrogation. *Id.* at 434 ("In view of an apparent tension between [the Circuits], we granted certiorari."); *see also Harrigill v. United States*, 410 F.3d 786, 790 n.6 (5th Cir. 2005) (not refuting the parties' concession that *Baral* abrogated the Fifth Circuit rule).

14

According to the Deatons, *Baral* only applies to remittances that fall under 26 U.S.C. § 6513(b), not to transmittals made with Form 4868, and their position is bolstered by the Court's final statement in *Baral*:

> We need not address the proper treatment under § 6511 of remittances that, unlike withholding and estimated income tax, are not governed by a "deemed paid" provision akin to § 6513(b). Such remittances might include remittances of estimated estate tax, as in *Rosenman*, or remittances of any sort of tax by a taxpayer under audit in order to stop the running of interest and penalties. In the latter situation, the taxpayer will often desire treatment of the remittance as a deposit--even if this means forfeiting the right to interest on an overpayment--in order to preserve jurisdiction in the Tax Court, which depends on the existence of a deficiency, a deficiency that would be wiped out by treatment of the remittance as a payment. We note that the Service has promulgated procedures to govern classification of a remittance as a deposit or payment in this context.

*Id.* at 439 n.2 (citations omitted). However, this statement does not answer either (1) whether the Deatons' remittance is one that is "governed by a 'deemed paid' provision akin to § 6513(b)" or (2) what the proper treatment is of remittances that are not "governed by a 'deemed paid' provision." The Deatons' position is that a remittance accompanying Form 4868 is *not* a remittance governed by a deemed paid provision and that remittances not governed by a deemed paid provision are subject to the facts-and-circumstances test established in *Rosenman*.[10] We take up this issue in subpart 4

---

[10]The Deatons also complain that *Baral*'s application to their case should be limited because the *Mercantile National Bank* rule was the law at the time they made their $125,000 remittance. However, we are not free to disregard *Baral* just because it was not

15

below.

Post-*Baral*, ours is the only circuit to have addressed the deposit-payment distinction. In *Harrigill v. United States*, 410 F.3d 786 (5th Cir. 2005), we addressed facts similar to the instant facts and held that the pre-assessment remittance at issue was a payment, not a deposit. Harrigill, like the Deatons, had filed a Form 4868 for the 1994 tax year and had submitted it with a remittance of the amount of tax she estimated to be due, which was later determined to be overstated. *Id.* at 787. Unlike the Deatons, however, Harrigill filed her tax return for 1994 within the limitations period, and the IRS duly credited her overpayment to her estimated taxes for the 1995 tax year, the return for which she had not yet filed. *Id.* at 787-88. When Harrigill later filed her 1995 return and found that she had again overestimated her tax liability, she sought to have the overpayment--which resulted from application of the first overpayment to her 1995 taxes--carried over as a credit for 1996. *Id.* at 788. The IRS denied Harrigill's

decided when the events leading to this appeal occurred:
> When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule.

*Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). This argument is also foreclosed by our panel decision in *Harrigill v. United States*, 410 F.3d 786 (5th Cir. 2005), which declined to treat a pre-assessment remittance as a deposit even though that remittance would have been treated as a deposit at the time it was made under our pre-*Baral* precedent.

16

request as time-barred, a decision we upheld. *Id.* at 788, 792.

In upholding the IRS's decision, we did not refute the parties' concession that *Baral* abrogated the *Mercantile National Bank* rule, *id.* at 790 n.6, an abrogation we now expressly recognize, and we used a facts-and-circumstances approach to determine whether the credit applied to Harrigill's estimated taxes for 1995 was an estimated payment of estimated income tax under § 6513(b)(2) subject to *Baral*'s rule that payments of estimated income tax are "deemed paid" on the due date of the return without extension, *id.* at 791-92. We did not address whether Harrigill's original remittance accompanying her Form 4868 application was a deposit or a payment as a matter of law because we determined that an application of credit, rather than a Form 4868 remittance, was at issue. The instant case, however, clearly involves a Form 4868 remittance, and we must now address the question left unanswered in *Harrigill*: Is a remittance submitted with a Form 4868 application for an extension of time to file a payment as a matter of law? Or is it subject to the facts-and-circumstances test of *Rosenman*? After *Baral*, this is essentially an issue of first impression in this Circuit; *Harden*, our prior Form 4868 case, which was based on *Mercantile National Bank*, no longer controls.

4.   The Deatons' Remittance

The primary issue in this case is the impact of *Baral* and post-*Baral* law on the deposit–payment distinction. As discussed

17

above, *Baral* abrogated the rule established in *Mercantile National Bank*. And the only post-*Baral* case to address the deposit-payment distinction used a facts-and-circumstances test to determine whether the remittance in question was a payment of estimated income tax under § 6513(b)(2) subject to *Baral*'s rule that payments of estimated income tax are deemed paid on the due date of the return without extension. *Harrigill*, 410 F.3d at 791-92. We have been called on here to decide what rule to apply post-*Baral* to characterize a remittance made in conjunction with a Form 4868 application for an extension of time to file. The alternatives offered are (1) a per se rule that all Form 4868 remittances are payments and (2) a facts-and-circumstances inquiry that would require a case-by-case analysis of any Form 4868 remittance made.

Like the *Harrigill* panel, we find it unnecessary to decide whether a Form 4868 remittance is a payment as a matter of law because we find that the Deatons' remittance of $125,000 in conjunction with their Form 4868 application for an extension of time to file constituted a payment of estimated income tax under §6513(b)(2). We hesitate to adopt a per se rule in a case in which the record clearly indicates that the taxpayers' remittance was a payment, not a deposit, and we therefore decline to do so. We leave for another day the question of whether all Form 4868 remittances should be treated as payments of estimated tax, even though we recognize that several of our sister circuits have already answered

18

this question in the affirmative. *See Dantzler v. United States*, 183 F.3d 1247, 1251 (11th Cir. 1999); *Ertman v. United States*, 165 F.3d 204, 207 (2d Cir. 1999); *Ott v. United States*, 141 F.3d 1306, 1308-09 (9th Cir. 1998); *Gabelman v. Comm'r*, 86 F.3d 609, 611-12 (6th Cir. 1996); *Weigand v. United States*, 760 F.2d 1072, 1074 (10th Cir. 1985). We agree with the Tax Court that even under the facts-and-circumstances approach proposed by the Deatons, their $125,000 remittance must be considered a payment of estimated tax. *See VanCanagan v. United States*, 231 F.3d 1349, 1352-53 (Fed. Cir. 2000). As such, their remittance is "governed by a 'deemed paid' provision" and controlled by *Baral*.

In their 1993 Form 4868, the Deatons indicated that "the amount [they] exepect[ed]" to list as their 1993 tax liability was $138,883 and that they had a "balance due" of $125,000. The Deatons remitted that $125,000. The Deatons submitted no contemporaneous evidence supporting their contention that they intended this amount to be a deposit when remitted; there is nothing on the face of the document or on the check submitted with it indicating such an intent. There is no evidence that the Deatons made an attempt to use the IRS procedure for making a deposit. In addition, there is no evidence suggesting that the Deatons were disputing their tax liability as in *Rosenman*. The IRS has always treated their overpayment as an "excess collection." At best, the record suggests that the Deatons had difficulty estimating their tax liability and

19

needed more time to file their 1993 tax return. That they had difficulty estimating their tax liability does not make their remittance of estimated tax a deposit of the kind recognized by *Baral* as retaining legal significance. *Baral*, 528 U.S. at 439 n.2.

We reject the Deatons' argument that in light of caselaw prevailing at the time of their remittance, we must presume that they intended to make a deposit. This argument requires that we find that they had actual or presumed knowledge of the prevailing law of this Circuit. They provide no factual evidence to support such a finding. Furthermore, the Deatons provide no legal authority to support their affirmative use of a presumption that a taxpayer knows the law. Such a presumption is normally reserved to the government in actions against taxpayers. *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 199 (1991). The Deatons provide no principled reason for allowing the affirmative use of such a presumption against the government, and we refuse to invent such a reason here.

We hold that on the facts and circumstances of this case, the Deatons' remittance of $125,000 was an "amount paid as estimated income tax" under § 6513(b)(2), not a deposit.[11]   Under that section, a remittance is deemed paid "on the last day prescribed for filing the return under section 6012 for such taxable year . . . ." I.R.C. § 6513(b)(2).  Because the $125,000 was thus

_____

[11]Therefore, like the *Baral* Court, we need not address the treatment of remittances not governed by a deemed paid provision. *Baral*, 528 U.S. at 439 n.2.

20

paid outside the look-back period of § 6511(b)(2)(A), the Deatons

cannot recover their overpayment. I.R.C. § 6511(b)(2)(A).

## III. Conclusion

Accordingly, we AFFIRM the Tax Court's decision.