NICHOLAS ACOUSTICS & SPECIALTY COMPANY, INC., Plaintiff

v.

UNITED STATES of America, Defendant.

Civil Action No. 3:08CV145TSL–FKB.

United States District Court, S.D. Mississippi, Jackson Division.

April 16, 2010.

Harris H. Barnes, III, James G. McGee, Jr., Barnes, Broom & Associates, PA, Flowood, MS, for Plaintiff.

Robert E. Dozier, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff Nicholas Acoustics & Specialty Company, Inc. (Nicholas) has brought this action against the United States pursuant to 28 U.S.C. § 1346(a) and 26 U.S.C. § 7422 seeking a refund of overpaid federal employment taxes and abatement of assessed interest and penalties, totaling $263,108.60. The United States has answered, denying that Nicholas has overpaid its federal employment tax liabilities for the tax periods at issue, and contending, further, that the penalties associated with these liabilities are proper and not subject to abatement. This cause is presently before the court on cross-motions for summary judgment by Nicholas and the United States. Each has responded to the other's motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the United States' motion is well taken and should be granted, and that Nicholas' motion should be denied.

Under the Federal Tax Employment System, employers are required to withhold federal income taxes, FICA (i.e., social security) taxes and Medicare taxes from the wages of its employees, and to remit those taxes, along with the employer's share of the FICA taxes, to the IRS, on a semi-weekly or monthly basis (unless the accumulated tax liability exceeds $100,000, in which case the deposit must be made the "first banking day after any day" in which $100,000 of liability has accrued). *See* 26 U.S.C. §§ 3101, 3102(a), (b), 3402, and 3403. The taxes are accounted for by the IRS through the use of Form 941 tax

returns, which the employer is required to file within one month from the end of the prior quarter. *See Farkas v. U.S.*, 57 Fed. Cl. 134, 139 (Fed.Cl.2003) (citations omitted). As of 1999, the vast majority of employers (including Nicholas) are required to remit these taxes through the Electronic Funds Transfer Payment System (EFTPS), a system established by the Treasury Department to facilitate the electronic collection of depository taxes.[1]

In this case, it is undisputed that for each of the taxable quarters beginning with the third quarter of 1999 and continuing through the fourth quarter of 2003, Nicholas regularly remitted employment and income taxes to the IRS through the EFTPS. However, Nicholas did not file its 941 tax returns for any of these eighteen tax periods until March 11, 2004, after being directed to do so by IRS auditor Howard Adams, who had begun an audit of Nicholas in 2003. Upon examination of these delinquent returns, the IRS determined that Nicholas' returns accurately reflected the company's 941 tax liability for

each of the quarters covered, as stated in a "no change" letter issued by auditor Adams in October 2004. However, in April 2006, the IRS notified Nicholas that the existing tax deposits credited to its account were insufficient to cover Nicholas' 941 tax liabilities, and that Nicholas owed an additional $106,004.19 in taxes for the fourth quarter of 1999, the second quarter of 2003, the third and fourth quarters of 2004, and the first and second quarters of 2005, together with $157,104.44 in penalties and interest, for a total of $263,108.60. On October 6, 2006, the IRS filed a Notice of Tax Lien against Nicholas for this amount. In order to get the lien released, Nicholas tendered $ 263,108.60 to the U.S. Treasury on February 8, 2007. Then, on April 17, 2007, Nicholas submitted to the IRS seven refund request forms (Forms 843) covering the referenced quarters (the "refund quarters"), purporting to seek a refund of all taxes included in its $263,108.60 payment and an abatement of the penalties and interest included in that figure.[2]

1. In 1993, Congress directed the Secretary of the Treasury to prescribe regulations for the development and implementation of an electronic fund transfer system for the collection of "depositary taxes," i.e., those taxes for which the Secretary of the Treasury is authorized to be paid through deposits, *see* 26 U.S.C. §§ 6302(h)(1), (4)(A). *See also* 26 U.S.C. §§ 6302(a), (b), and (c). The Treasury Department thus established the Electronic Funds Transfer Payment System (EFTPS). Under the system, two methods of electronic pay-

ments are available to a business taxpayer, such as Nicholas: EFTPS Through a Financial Institution (Automated Clearing House Credit, or ACH credit) or EFTPS Direct (ACH debit). In an ACH credit transaction, the taxpayer authorizes a financial institution, such as the taxpayer's bank, to initiate an ACH credit transaction to pay the IRS according to the taxpayer's directions. In an ACH debit transaction, the taxpayer remits funds through a debit transaction initiated through direct contact with the EFTPS system and its financial agents.

2. Nicholas' refund claims purported to seek recovery for these refund quarters in the following amounts:

| | |
|---|---|
| 4th quarter 1999 | $ 61,475.62 |
| 2nd quarter 2003 | $ 1,881.20 |
| 3rd quarter 2003 | $ 4,294.46 |
| 3rd quarter 2004 | $ 52,914.95 |
| 4th quarter 2004 | $ 70,636.86 |
| 5th quarter 2005 | $ 9,067.16 |
| Total tax refund claimed: | $200,270.25 |
| Penalties/interest claimed: | $ 62,838.35 |

However, defendant states that these specific amounts claimed by Nicholas for the respective quarters do not accurately reflect how the $263,108.60 was actually applied by the IRS to Nicholas' Form 941

In support of its refund claims, Nicholas submitted a letter explaining its position—which remains its position herein—that by virtue of having made deposits in a number of quarters in excess of its actual Form 941 liabilities, Nicholas had created and maintained throughout all the relevant tax periods a significant credit that was more than sufficient to satisfy in full its tax liabilities as established by its Forms 941. It claimed, however, that the IRS failed to apply all of Nicholas' deposit credits on Nicholas' account to the correct quarters in accordance with Nicholas' deposit instructions,[3] and further improperly transferred substantial deposit funds from Nicholas' account to an excess collections account, and that these improper actions by the IRS had both prevented Nicholas from receiving proper credit for its tax deposits and resulted in the assessment of penalties and interest. Nicholas thus claimed that the IRS, by its own actions, had created the alleged shortfall on Nicholas' account for the several quarters at issue (i.e., the refund quarters).

By letter of December 31, 2007, the IRS denied the refund claims, including the claim for abatement of penalties and interest. Following the denial, Nicholas promptly filed this suit, seeking to recover the $263,108.60 it paid to the United States

on February 8, 2007 to release the lien, taking the position that "based on the excess money it deposited with the Defendant during the applicable time period," there was no deficiency, and therefore, such part of the $263,108.60 paid to satisfy its alleged tax liability was an overpayment, which it is entitled to recover in full, and asserting that it is entitled, as well, to an abatement of the penalties and interest assessed against it.

The foundation of Nicholas' refund claim in this case is its position that because in many tax quarters, beginning in the third quarter of 1999, it deposited more than was due to satisfy its 941 liabilities, it consistently maintained a surplus, or credit, that should have been rolled forward to subsequent periods, so that it should never have had a deficit in any tax period. Yet, according to Nicholas, the problem arose because IRS failed to properly credit all Nicholas' remittances to its account. Specifically, Nicholas has identified thirteen remittances that it made in or for certain tax quarters which it contends the IRS failed to properly credit to its account, which, in turn, led to the IRS's concluding that Nicholas had shortfalls in other tax quarters. As to three of the remittances, Nicholas alleges that the IRS failed to

liabilities for the refund quarters. Defendant has submitted the declaration of IRS Technical Services Advisor Katherine F. Young, explaining that, consistent with normal IRS practices, Nicholas' $263,108.60 payment was applied to each of the subject quarters, as follows:

|  | Total: | Tax: | Interest | Penalties: | Other: |
|---|---|---|---|---|---|
| 4th quarter 1999 | $ 36,409.04 | $15,257.58 | $21,151.46 |  |  |
| 2nd quarter 2003 | $ 1,306.39 |  | $ 759.71 | $ 249.30 | $297.38 |
| 3rd quarter 2003 | $ 5,442.91 | $ 2,758.03 | $ 2,684.52 |  | $ .36 |
| 3rd quarter 2004 | $ 61,105.77 | $17,531.68 | $ 9,952.90 | $33,621.19 |  |
| 4th quarter 2004 | $ 84,415.22 | $45,988.39 | $ 9,724.45 | $27,894.90 | $807.48 |
| 1st quarter 2005 | $ 10,000.37 |  | $ 933.21 | $ 9,067.16 |  |
| 2nd quarter 2005 | $ 64,428.90 | $24,468.51 | $ 5,053.68 | $34,906.71 |  |
| Total | $263,108.60 |  |  |  |  |

3.  Nicholas' letter recited, specifically, that its cumulative tax deposits of $183,579.00 from the third quarter of 1999 through the first quarter of 2004 were "more than enough to eliminate" the taxes the IRS alleged was due. Nicholas also took the position that penalties and interest totaling $62,838.35 should be

abated because its deposits exceeded its actual liabilities, as a result of which it maintained a substantial credit throughout the relevant time period and hence at no time had a deficit in the amount of taxes due on its account.

follow Nicholas' instructions as to the quarter to which the deposit was to be credited, as a result of which Nicholas ended up getting no credit for the remittances. And as to the other ten deposits, Nicholas contends that, instead of crediting the full amount of each of these deposits to Nicholas' tax account, the IRS wrongfully transferred all or part of these ten remittances to an "excess collections" account, ostensibly because these deposits, or portions thereof, were overpayments which Nicholas was barred from recovering because the statute of limitations for seeking a refund or credit had expired.[4] Nicholas contends that, had it received proper credit for all these remittances, there would have been no basis for the IRS's determination that Nicholas had underpaid taxes in subsequent quarters (the refund quarters), or its imposition of penalties and interest (other than failure to file penalties, which it contends should be abated for reasonable cause), and that

therefore, its $263,108.60 was an overpayment, which it is entitled to recover.

Nicholas has brought this action under the authority of 28 U.S.C. § 1346(a)(1), which grants the district courts original jurisdiction of suits against the United States to recover "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws," 28 U.S.C. § 1346(a)(1); and under 26 U.S.C. § 7422(a), which qualifies the taxpayer's right to bring a refund suit, providing that before any such suit may be brought, the taxpayer must first have duly filed a claim for refund or credit with the IRS, "according to the provisions of law in that regard." 26 U.S.C. § 7422(a).

The provisions of law and regulations setting forth the requirements for a "duly filed" claim for refund include the limita-

---

4. Nicholas specifically claims as follows:

- For a September 21, 1999 tax deposit of $15,280.20, which was to be applied to its 941 tax liability for the 3rd quarter of 1999, it was given credit for only $12,770.68, and the remaining balance of $2,509.52 was wrongly transferred to excess collections as an unrefundable overpayment.

- Tax deposits made in October 1999 in the amounts of $16,381.44 and $27,832.40, which Nicholas directed the IRS to apply to the 4th quarter of 1999, were erroneously applied to the 3rd quarter of 1999, and thereafter wrongly transferred to excess collections as an unrefundable overpayment.

- It received no credit for a May 30, 2000 tax deposit of $1,070.38, which was to be applied to the 2nd quarter of 2000.

- A June 30, 2000 tax deposit of $15,622.88, which was intended to apply to the 2nd quarter of 2000, was wrongly transferred to excess collections as an unrefundable overpayment.

- A July 3, 2000 tax deposit of $16,322.50, which was to be applied to the 2nd quarter

of 2000, was wrongly transferred to excess collections as an unrefundable overpayment.

- For an August 28, 2000 tax deposit of $14,222.36, which was to be applied to the 3rd quarter of 2000, it was given credit for only $9,893.17, and the balance of $4,329.19 was wrongly transferred to excess collections as an unrefundable overpayment.

- Tax deposits in September and October 2000, in the amounts of $13,499.02 and $15,844.22, which were to be applied to the 941 tax liability incurred for the 3rd quarter of 2000, were wrongly transferred to excess collections as unrefundable overpayments.

- Tax deposits in January 2001 of $14,300.44 and $15,833.40, which were to be applied to the 4th quarter of 2000, were wrongly transferred to excess collections as unrefundable overpayments.

- It never received any credit for two tax deposits in September 2004, in the amounts of $23,642.02 and $22,180.64, which were intended to be applied to the 4th quarter of 2000.

tions periods set forth in 26 U.S.C. § 6511, which places two separate limitations on claims for refund. First, § 6511(a) establishes the deadline for filing a refund claim with the IRS. Under this section, a claim for refund or credit of an overpayment of tax must be filed within three years from the time a return was filed or two years from the time the tax was paid, whichever period expires later, or, if no return was filed, within two years from the time the tax was paid. Second, § 6511(b)(2) limits the amount of a refund which may be recovered, even when a timely refund claim is filed, by establishing two "look-back" periods. Under § 6511(b)(2)(A), if a claim was filed within the three-year period prescribed under § 6511(a), a credit or refund can be received only for the amount paid within the three years immediately preceding the filing of the refund claim, plus any extension of time for filing the underlying return. If a claim is not filed within this three-year period, the amount of the credit or refund is limited under § 6511(b)(2)(B) to the amount paid during the two years immediately preceding the filing of the refund claim. Thus, even where a claim for refund is timely filed within the limitations period provided in § 6511(a), application of the limitations imposed by § 6511(b)(2) can operate to reduce or eliminate entirely the amount of refund or credit a taxpayer may receive.

In this action, the United States does not dispute that Nicholas filed timely claims for refunds in accordance with the requirements of § 6511(a). It contends, however, that by the time Nicholas filed refund claims, which occurred, *at the earliest*, when Nicholas filed its returns in May 2004, the overpayments which Nicholas had made prior to May 2001 were outside the three-year look-back period of § 6511(b)(2)(A), and hence those overpayments could not be refunded or credited to Nicholas and were therefore properly transferred to the Services' excess collections account. Consequently, contrary to Nicholas' urging, Nicholas did not maintain a credit balance to cover underpayments in other quarters. Thus, according to defendant, the IRS correctly determined that additional tax payments were due from Nicholas to satisfy its outstanding 941 tax liabilities, and that Nicholas was liable, as well, for interest, and for failure to file, failure to pay and failure to deposit penalties. It submits, moreover, that it has amply demonstrated that these liabilities existed, and that Nicholas' payment of the full $263,108.60 in April 2007 was required to satisfy these liabilities, so that no part of that $263,108.60 was an overpayment which could be refunded to Nicholas.

■ As is clear from the foregoing, a critical issue in this case is whether the IRS acted properly in transferring a total of $137,137.43 in deposits from Nicholas tax account to the Service's excess collections file.[5] These transfers were made based on the IRS's determination that this amount represented overpayments by Nicholas that could not be refunded or credited because the statute of limitations for recovering these overpayments had expired. Nicholas argues, however, that the limitations imposed by § 6511 did not apply to bar it from obtaining a refund or credit for those tax deposits since that statute applies only to tax "payments," and not to "deposits," and its 941 remittances

---

**5.** The record establishes that the IRS made twelve such transfers to excess collections in March and April 2005 as follows: $46,723.36 that had been remitted in and for application to the third quarter of 1999; $39,109.91 re- mitted in July 2000 for the second quarter of 2000; $33,672.43 remitted in and for the third quarter of 2000; and $28,763.33 remitted in January 2001 for the fourth quarter of 2000.

were "deposits," not "payments." The Government, on the other hand, insists that, as a matter of law, employers' 941 tax remittances are payments, not deposits, and therefore subject to the limitations periods of § 6511, and that since it has no authority to issue the taxpayer a refund or credit of overpayments as to which the limitations period has expired, it had no alternative but to transfer these deposits from Nicholas' tax account. Having considered the parties' arguments and pertinent authorities, the court concludes, as a matter of law, that for purposes of § 6511, the remittances at issue were not merely deposits, but rather were payments.

■ The importance of the distinction between a "deposit" and a "payment" of taxes is if the remittance is determined to be a "deposit," then the taxpayer is entitled to recover it, whereas if it is a "payment," then the taxpayer can recover it only if it files a timely claim for refund. *Miller v. United States*, No. 99–737 T, 2000 WL 1868947, at *3 (Fed.Cl. Nov. 9, 2000) (citation omitted).[6] This distinction between deposits and payments was first established in *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). *See Deaton v. C.I.R*, 440 F.3d 223, 228 (5th Cir.2006). In *Rosenman*, a case involving the "look-back" provision of the predecessor of § 6511(b)(2), the Court held that the remittance under consideration, made in connection with the procurement of a two-month extension for filing an estate tax return, was in the nature of a deposit and did not become a "payment" until the tax was actually assessed by the IRS. In reaching this conclusion, the Court considered all the facts and circumstances attending the remittance, including the ex-

ecutors' intent as expressed in a transmittal letter accompanying the remittance, which stated in part: "This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Id.* at 660–61, 65 S.Ct. at 537. The Court concluded that when the executors submitted the remittance, they "did not discharge what [they] deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define." *Id.* at 662, 65 S.Ct. at 538. Further noting the IRS's deposit of the funds into a suspense account, the Court concluded that "[m]oney in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Id.* The Court ruled that considering the facts and circumstances presented, the remittance was a deposit and that the statute of limitations therefore did not bar the executors' claim for refund.

While most lower courts interpreted *Rosenman* as creating a facts and circumstances test for distinguishing between deposits and payments, in which the courts undertook to determine, based on all of the relevant facts and circumstances, whether the remitter intended the remittance to satisfy what he or she regarded as an existing tax liability, *see Deaton*, 440 F.3d at 228 (citing cases), the Fifth Circuit interpreted *Rosenman* as establishing a generally applicable rule that a remittance in respect of a tax cannot become a "payment" of that tax for purposes of § 6511 until the IRS assesses the tax in question.

**6.** *See also United States v. Domino Sugar Corp.*, 349 F.3d 84, 87 n. 2 (2d Cir.2003) ("Payments can be retrieved only through the long refund process, while deposits are recoupable by a simple letter request before assess-

ment of the underlying tax.") (quoting *Mark Aquilio, Payment v. Deposit: Make Sure Tax Deposits Are Not Payments*, 54 Tax'n for Acct. 89, 96 (1995)).

See id. (citing cases). However, in *Baral v. United States*, 528 U.S. 431, 437–438, 120 S.Ct. 1006, 145 L.Ed.2d 949 (2000), the Supreme Court explicitly rejected this position. *See Deaton*, 440 F.3d at 230 (citing *Baral*, 528 U.S. at 434, 437, 120 S.Ct. 1006) ("[T]he Code directly contradicts the notion that payment may not occur before assessment."). In this court's opinion, the Court's further holding in *Baral*, that taxes covered by 26 U.S.C. § 6513(b) are "payments," not merely "deposits," and hence subject to the limitations provisions of § 6511, is determinative of the deposit/payment issue presented in this case.

*Baral* was a § 6511 case involving income tax withholding and a remittance of estimated tax under 26 U.S.C. § 6513(b)(1) and (2), which state:

> (b) Prepaid income tax.—For purposes of section 6511 or 6512—
>
> (1) Any tax actually deducted and withheld at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.
>
> (2) Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

The Court in *Baral* held that §§ 6513(b)(1) and (2) "settled the question" of whether the remittances at issue were payments for purposes of the look-back provision of § 6511(b)(2)(A), explaining as follows:

> Subsection (1) resolves when the remittance of withholding tax by Baral's employer was "paid": Since Baral is a calendar year taxpayer, the $4,104 withheld from his wages during the 1988 calendar year was "paid" on April 15, 1989. Subsection (2) determines when Baral's remittance of estimated income tax was "paid": Since the referenced § 6012 together with § 6072(a) requires that a calendar year taxpayer like Baral file his income tax return on the April 15th following the close of the calendar year, the $1,100 remitted as an estimated income tax in respect of Baral's 1988 tax liability was likewise "paid" on April 15, 1989. *And both of these statutorily defined payment dates apply "[f]or purposes of section 6511," the provision directly at issue in this case. This means that, under § 6511(b)(2)(A), both remittances at issue (the withholding and the estimated income tax) fall before, and hence outside, the look-back period, which commenced on February 1, 1990. Because neither these remittances nor any others were "paid" within the look-back period (February 1, 1990, to June 1, 1993), the ceiling on Baral's requested credit of $1,175 is zero, and the Service was correct to deny the requested credit.*

*Baral*, 528 U.S. at 436, 120 S.Ct. at 1009 (emphasis added). The Court continued, stating:

> Withholding and estimated tax remittances are not taxes in their own right, but methods for collecting the income tax. Thus, 31(a)(1) of the Code provides that amounts withheld from wages "shall be allowed to the recipient of the income as a credit against the [income] tax," and 6315 states that "[p]ayment of the estimated income tax, or any installment thereof, shall be considered payment on account of the income taxes imposed by subtitle A for the taxable year." Similarly, one of the regulations cited by Baral explains that a remittance of estimated income tax "shall be considered payment *on account of the income tax* for the taxable year for which the esti-

mate is made." 26 C.F.R. 301.6315–1 (1999).

*Id.* at 436–37, 120 S.Ct. at 1009.

A number of courts, applying *Baral's* specific holding in the context of the "deemed paid" provisions of § 6513(b)(1) and (2), have applied § 6511 to bar refund claims for remittances deemed paid under these provisions. *See, e.g., Freeman v. United States,* No. Civ. A. H–05–1204, 2005 WL 3132185, at *4 (S.D.Tex. Nov. 22, 2005) (§ 6511(b)(2) barred plaintiff's claim for recovery of overpaid income taxes which § 6513(b)(2) "deemed paid" before look-back period). However, the reasoning of *Baral* applies with equal force to the case at bar. Indeed, it is clear from the *Baral* Court's opinion that the Court's holding extends beyond the specific context in which the case was decided. That is, while *Baral* did not purport to determine the proper treatment under § 6511 of remittances that are not governed by a "deemed paid" provision, the Court clearly held that *"remittances which are* governed by a 'deemed paid' provision akin to § 6513"* are "payments" subject to § 6511. *Id.* at 439 n. 2, 120 S.Ct. at 1011 n. 2 ("We need not address the proper treatment under § 6511 of remittances that, unlike

withholding and estimated income tax, are not governed by a 'deemed paid' provision akin to § 6513(b).").

In the case at bar, Nicholas argues that facts and circumstances attending its 941 remittances clearly show that it intended these remittances as deposits, not payments, and that the IRS, in fact, understood these were deposits, not payments,[7] such that the remittances were deposits and hence not subject to the limitations periods of § 6511. In the court's opinion, however, Nicholas' argument, that a "facts and circumstances" test applies to the question whether its remittances were "deposits" or "payments" of taxes, is clearly foreclosed by *Baral* since Nicholas' 941 remittances are governed by the "deemed paid" provision of § 6513(c), which states:

> (c) Return and payment of social security taxes and income tax withholding.— Notwithstanding subsection (a), for purposes of section 6511 with respect to any tax imposed by chapter 3, 4, 21, or 24—
>
> (1) If a return for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such succeeding calendar year; and

---

**7.** In this regard, Nicholas points to its bookkeeper's testimony that the remittances in years 1999 through 2000 were not based on any premeditated calculation of estimated tax payments but were instead random monetary amounts; that in response to telephone prompts in the EFTPS system through which the remittances were submitted asking whether she wished to submit a "deposit" or "payment", she always chose "deposit"; and that she submitted these monetary amounts in an effort to deter any unfavorable action by the IRS. Nicholas also claims that the IRS treats 941 remittances as deposits in general, as evidenced by references in numerous IRS publications to 941 remittances as "deposits" or "tax deposits." Finally, Nicholas points out that its tax liability for the third quarter of 1999 through the fourth quarter of 2003 was not assessed until the 941 returns were submitted on May 11, 2004, well after the subject remittances. *See Ertman v. United States.,* 972 F.Supp. 706, 708 (D.Conn.1997) ("Under the facts and circumstances test, the court considers various factors when determining whether a remittance is a 'payment,' including when the tax liability is defined, the taxpayer's purpose in remitting the money and how the IRS treated the payment.") (citing *Blatt v. United States,* 34 F.3d 252, 255 (4th Cir.1994)).

The United States disputes each of the facts cited in Nicholas' facts and circumstances argument, primarily on the basis that the record simply does not support Nicholas' assertions. However, the court need not address the parties' disputes as to the result a facts and circumstances analysis would yield, as the court concludes that this analysis is plainly inapplicable in this case.

(2) If a tax with respect to remuneration or other amount paid during any period ending with or within a calendar year is paid before April 15 of the succeeding calendar year, such tax shall be considered paid on April 15 of such succeeding calendar year.

Under the plain language of § 6513(c)(2), Nicholas' "federal tax deposits" of FICA and withheld income tax were subject to this "deemed paid" provision and hence under *Baral* were "payments" as a matter of law for purposes of the limitations provisions of § 6511. *See Williams–Russell v. United States,* No. Civ. A. 1:02–CV–10–GET, 2003 WL 22073187, *2 (N.D.Ga. July 21, 2003) (denying claim for refund of employment taxes "deemed paid" on April 15, 1992 since by the time the plaintiff filed the claim for refund on January 27, 2000, the statute of limitations in § 6511(a) had expired on all the claims); *see also Sugro, Inc. v. U.S.,* 57 F.3d 1081, 1995 WL 365666, at *2 (10th Cir.1005) (unpublished table decision)(pre-*Baral* case holding that "[f]or statute of limitations purposes, an amount withheld and remitted is deemed paid on April 15 of the year following the close of the tax year[,] 26 U.S.C. 6513(c)(2)," so that, as a matter of law, a claim for refund of remittance of withheld employment taxes more than three years after date such taxes were "deemed paid" was untimely, regardless of the taxpayer's claimed intent that such remittance be treated only as a deposit); *In re Dunhill Medical, Inc.,* Bankr.No. 92–37700, 1996 WL 354696, at *7, and n. 4 (Bkrtcy.D.N.J. Mar. 27, 1996) (pre-*Baral* case applying provisions of § 6511(b) to determine whether refund claim was timely after noting that under § 6513(c), a return or a payment of social security taxes and income tax withholding filed or paid before April 15 of the succeeding calendar year, is considered filed or paid on April 15 of such succeeding calendar year).[8]

Nicholas argues, alternatively, that even if the court concludes its 941 remittances were tax "payments," so that the limitations periods of § 6511 apply, § 6511 still does not operate as a bar to its recovery in this case since the refund it seeks is of the

---

8. As the Government points out, IRS regulations establishing employment tax deposit rules for FICA and withheld income taxes similarly deem employment tax "deposits" to be payments for the year following the period for which the deposits are made: For example, 26 C.F.R. § 31.6302–1(h)(9), states:

> (9) Time deemed paid. In general, an amount deposited under this paragraph (h) [deposits required to be made by electronic funds transfer] will be considered to be a payment of tax on the last day prescribed for filing the applicable return for the return period (determined without regard to any extension of time for filing the return) or, if later, at the time deemed deposited under paragraph (h)(8) of this section. In the case of the taxes imposed by chapters 21 and 24 of the Internal Revenue Code, solely for purposes of section 6511 and the regulations thereunder (relating to the period of limitation on credit or refund), if an amount is deposited prior to April 15th of the calendar year immediately succeeding the calendar year that includes the period for which the amount was deposited, the amount will be considered paid on April 15th.

*See also* 26 U.S.C. § 302(c)(granting Treasury Secretary authority to authorize use or government depositories "to receive any tax imposed under the internal revenue laws, in such manner, at such times, and under such conditions, as he may prescribe" and to prescribe "the manner, times, and conditions under which the receipt of such tax by such banks, trust companies, domestic building and loan associations, and credit unions is to be treated as payment of such tax to the Secretary."); 26 U.S.C. § 6656(a) (providing for penalty as percentage of the amount of "underpayment" that results from the failure to timely deposit). It is clear from the regulations that Nicholas' employment "tax deposits" are "payments" for purposes of § 6511.

$263,108.60 it paid in February 2007, as to which it filed its refund claims with the IRS on April 17, which was timely under both § 6511(a) and § 6511(b). If Nicholas were seeking in this case to recover the overpayments it made in the third quarter of 1999 and the second, third and fourth quarters of 2000, its claim would be directly barred by § 6511(b)(2)(A), since while Nicholas did submit a request for refund which was timely under § 6511(a), it did not submit a timely request for refund under § 6511(b)(2)(A).[9] As one court has succinctly explained:

> [Section] 6511(a) is the more benign of the two limitations periods (in § 6511). Section 6511(a) merely requires the taxpayer to file his claim for refund either within three years of the filing of the tax return or within two years of the payment the taxes. The taxpayer can easily satisfy this requirement at any time by remembering to file a tax return before filing the claim for refund. Section 6511(b)(2) imposes the more significant limitation on the filing of claims for refund. It requires the taxpayer to file his claim for refund within either two or three years from the date on which the taxes were paid. The taxpayer receives the three-year limitations period as long as he has filed a tax return within the three years preceding the filing of the claim for refund. Otherwise, the taxpayer receives only the two-year limitation period. In effect, § 6511(b)(2) is the real statute of limitations; it identifies which taxpayers have properly positioned themselves to obtain a refund. Section 6511(a) merely determines whether the taxpayer receives the two-year or three-year limitations period under § 6511(b)(2).

*Webb v. U.S.*, 66 F.3d 691, 704–705 (4th Cir.1995). *See also Lorusso v. United States*, Civ. A. No. 94–11713–NG, 1996 WL

---

**9.** The IRS initially processed the 941 tax returns filed by Nicholas on May 11, 2004, for the third quarter of 1999, and the second, third and fourth quarters of 2000, as refund requests, and sent letters to Nicholas in April 2005 purporting to reject the alleged refund requests on the basis that the statute of limitations under § 6511(b)(2)(A) had expired since any overpayments in those quarters were made, or "deemed paid," as of April 1, 2000 and April 1, 2001, respectively, which was more than three years prior to the filing of the returns. Nicholas insists the IRS had no authority to treat those returns as refund requests, since Nicholas did not indicate on the 941 returns that it was requesting a refund for the overpayments reflected thereon, since, according to Nicholas, under 26 C.F.R. § 301.6402–3(a)(5), the filing of a tax return only qualifies as a simultaneous request for refund if the taxpayer marks the appropriate box requesting a refund or a credit. Nicholas insists that the only refund claims it filed with the IRS were the seven Forms 843 filed on April 19, 2007, by which Nicholas sought to recover the $263,108.60 it had paid in February 2007 in response to the IRS's notice that additional taxes were due to be paid. And since those claims were timely under § 6511, defendant has no viable limitations defense.

In response, the United States argues that, contrary to Nicholas' position, it had the discretionary authority to treat the 941 returns as refund requests, pursuant to 26 C.F.R. § 301.6402–4, which provides that the IRS "may make credit or refund of such overpayment without awaiting examination of the completed return and without awaiting filing of a claim for refund." Because the ultimate result in this case is the same, regardless of whether Nicholas' refund claims are considered to have been filed with the IRS in May 2004 or instead, in April 2007, the court need not resolve this issue. The court would note, however, that in the circumstances of this case, Nicholas has suffered no prejudice, and indeed, has benefitted from the IRS's having treated its delinquent 941 returns as requests for refund or credit, since by its doing so, Nicholas received credits for overpayments in certain quarters in 2001, 2002 and 2003, which were within the look-back period when the returns were filed in May 2004 but which were outside the look-back period (and hence unrefundable) when Nicholas filed its refund requests in April 2007.

512319 (D.Mass. June 25, 1996) ("It is generally assumed that a return may be filed at any time after its due date and still be a return for the purposes of [§ 6511(a) ]").

■ Because Nicholas did file a return in May 2004, the look-back period under § 6511(b)(2)(A) was three years. However, the taxes remitted in taxable quarters of 1999 and 2000 were paid, or "deemed paid," on and before April 15, 2000 and April 15, 2001, respectively, both of which dates are more than three years before the returns were filed. Accordingly, by the time the returns were filed, the statute of limitations for recovery of payments for those quarters had already run, and any claim for refund of those payments was barred by the limitations period in § 6511(b)(2)(A). *See Alternative Entertainment Enters., Inc. v. United States,* No. 06–2596, 277 Fed.Appx. 590, 593–94 (6th Cir.2008) (rejecting refund claim where return and refund claim were filed in April 2004, since estimated taxes allegedly overpaid were deemed paid September 15, 1999 and September 15, 2000, respectively, and hence did not fall within the look-back period, so that "the 'ceiling' on AEE's refund for each year [was] zero"); *Heichel v. Commissioner of Internal Revenue,* Nos. 13504–05L, 13505–05L, 13534–05L, 2008 WL 5330808, at *1 (U.S.Tax Ct. Dec. 22, 2008) (since overpayments were received by IRS before May 1, 2001, then at the time plaintiff taxpayers filed their tax returns on May 17, 2004, refunds were already barred by the period of limitations under § 6511(b)(2)); *cf. Huskins v. United States,* 75 Fed.Cl. 659 (Fed. Cl.2007) (explaining that if Estate's remit-

tance on May 5, 2000 was a "payment," then latest possible date Estate could have filed a claim and received a refund for overpayment was May 5, 2003, so that Estate would not be able to recover overpayment based on return and claim filed November 12, 2004); *Ciccotelli v. United States,* Civ. A. No. 08–1886, 2009 WL 929106 (E.D.Pa. Apr. 2, 2009) (explaining that *"[i]f* plaintiffs' $50,000 remittance (on January 17, 2001) is considered a 'payment,' they must forfeit the funds because their tax return for 2000 was filed on August 1, 2005—nine months after the statute of limitations expired on October 15, 2004 (three years plus six-month extension after date taxes "deemed paid")." [10] Clearly, in the case at bar, alleged overpayments by Nicholas in the third quarter of 1999, and the second, third and fourth quarters of 2000, could not be refunded because none of those payments were made, or deemed paid, within the applicable look-back period under § 6511(b)(2)(B).

However, Nicholas argues that the overpayment it is seeking to recover is the $263,108.60 it paid in April 2007 for alleged outstanding liabilities, penalties and interest for the fourth quarter of 1999, the second quarter of 2003, the third and fourth quarters of 2004, and the first and second quarters of 2005. Obviously, Nicholas' refund claim for this payment, filed in April 2007, was timely under both § 6511(a) and 6511(b), since it was filed within three years of the date of its returns and within three years of the date of Nicholas' $263,108.60 payment. However, the United States has not denied that Nicholas' claims for refund *of this pay-*

**10.** The remittances in *Huskins v. United States,* 75 Fed.Cl. 659 (Fed.Cl.2007), and *Ciccotelli v. United States,* Civ. A. No. 08–1886, 2009 WL 929106 (E.D.Pa. Apr. 2, 2009), were not governed by "deemed paid" provisions and were subject to an analysis of the facts and circumstances surrounding the remittances to determine whether they were depos-

its or payments. In both cases, the courts concluded the remittances were deposits. The cases are cited for their explanation that the refund claims would have been denied if the remittances were payments because the payments occurred outside the look-back period under § 6511(b)(2).

*ment* was timely within both of § 6511's limitations periods. Rather, it contends that Nicholas is not entitled to a refund of the $263,108.60, because no part of this payment was an overpayment. Instead, the full $ 263,108.60 was required to satisfy tax liabilities, together with penalties and interest, that arose when credits on Nicholas' accounts became unavailable to satisfy Nicholas' tax liabilities because of the limitations bar and were thus transferred from its deposit account to the IRS excess collections fund.

■ As a matter of law, overpayments which are made, or deemed made, outside the limitations period of § 6511 cannot be refunded or credited to the taxpayer. *See* 26 U.S.C. § 6402(a) ("In the case of any overpayment, the Secretary, *within the applicable period of limitations,* may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.") (emphasis added); 26 U.S.C. § 6514(a)(1) ("A refund of any portion of an internal revenue tax shall be considered erroneous and a credit of any such portion shall be considered void ... [i]f made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed."). Payments which cannot be refunded or credited to the taxpayer because they were made outside the limitations period are routinely transferred to an "excess collections" file or account. *See, e.g., Heichel,* 2008 WL 5330808, at *1 (observing that overpayments for which refund or credit was not allowable under

§ 6511 period of limitations were transferred to an excess collections account); *Ciccotelli,* 2009 WL 929106, at *2 (observing that IRS transferred funds to excess collections account to which "funds are transferred if the Service no longer credits those funds to a certain tax year"); *Lorusso,* 1996 WL 512319 (excess taxes paid more than four years prior to filing of return which were therefore barred by § 6511(b)(2) statute of limitations were not recoverable by taxpayer and thus posted to "excesscollections account"). That is precisely what occurred here. Specifically, as explained by IRS Lead Examiner Annie McDonald, after receiving Nicholas' eighteen Forms 941 in May 2004, it was determined that while Nicholas' payments in a number of quarters covered by the returns exceeded its liabilities, as shown on its Forms 941, the overpayments for some of those quarters were beyond the applicable look-back period under § 6511(b)(2)(A), and specifically, overpayments in the fourth quarter of 1999, and the second, third and fourth quarters of 2000. The IRS thus transferred the excess remittances to its excess collections file. After transferring funds to the excess collections file amounts which could not be refunded or credited to Nicholas, the IRS, consistent with its procedures, transferred other overpayments in some of the other eighteen quarters in which the applicable look-back periods remained open as of May 11, 2004, to prior or subsequent periods, thereby satisfying in part Nicholas' other tax liabilities. Once this was done, it was determined that Nicholas' existing tax deposits were insufficient to satisfy its outstanding tax liabilities, as reflected on its Forms 941.[11]

---

11. The IRS determined that Nicholas had overpaid its 941 tax liabilities for the third quarter of 1999 by $46,723.36. That figure includes two payments, in the amounts of $16,381.44 and $27,832.40, which Nicholas

alleged the IRS erroneously applied to the third quarter of 1999, in derogation of Nicholas' instructions when making these tax deposits that they were to be applied to the fourth quarter of 1999. As a result, both of

It bears repeating that Nicholas' principal position in this case is that, because its deposits for the eighteen quarters covered by the returns it filed in May 2004 exceeded its actual 941 tax liabilities, it maintained a substantial credit throughout the relevant time period and consequently had no shortfall in the amount of taxes due on its account. Therefore, its tax payment in February 2007 was an overpayment, for which it is entitled to a refund. The court has now rejected Nicholas' assertion that its 941 remittances were deposits, and has held that these remittances were payments as a matter of law, and therefore subject to § 6511. The court has also concluded that, as a matter of law, a number of Nicholas' 941 remittances occurred outside the look-back period under § 6511(b)(2)(A). And, the court has recognized that, as a matter of law, the IRS had no authority to refund or credit to Nicholas those payments which were made outside the look-back period.[12]

these payments became overpayments for the third quarter of 1999, which Nicholas ultimately was unable to recover or receive credit for once the limitations period had passed for seeking a refund or credit of the overpayment. Further, since Nicholas' payments intended for the fourth quarter were not credited to that quarter, Nicholas' tax deposits for the fourth quarter of 1999 fell far short of its actual 941 liability.

The United States maintains that it applied these two disputed payments to the third quarter of 1999 in accordance with Nicholas' express instructions, as evidenced by the IRS transcript for this period. The only evidence Nicholas has offered as suggesting that the payments were misapplied to the wrong quarter are its bank statements; but these are not probative evidence on the issue, since they show only the dates of the withdrawals, and do not tend to show the quarters to which Nicholas directed these payments be applied. In short, Nicholas has failed to create a triable issue of whether the IRS misapplied these payments were misapplied.

As to two other payments which Nicholas contends were misapplied—$23,642.02 and $22,180.64, which Nicholas contends it directed be applied to the fourth quarter of 2004—the evidence of record fully supports the United States' position that these payments were applied, *in accordance with Nicholas' instructions*—to the fourth quarter of 2003. And the evidence also confirms that a payment of $1,070.38, for which Nicholas contends it never received credit, was in fact applied to Nicholas' 941 liabilities for the second quarter of 2000, as instructed by Nicholas.

12. Nicholas challenges the IRS's authority to transfer any of its 941 remittances to the excess collections account *after* Nicholas actually filed its tax returns. Nicholas purports to acknowledge that it "would have an uphill battle establishing that it should receive a credit, after the credit has been swept to Excess Collections, but before the tax return was filed," but it claims that because at the time it filed its tax returns in May 2004, the IRS had not yet transferred any of Nicholas' payments to excess collections so that all its payments remained as deposit credits on its account, then the IRS lacked the authority to come in nearly a year later and "arbitrarily [sweep] such credits off of [Nicholas'] account and into Excess Collections." According to Nicholas, "if the credit was available at the time the tax return was filed, it should have received proper credit towards the tax assessment at the time the tax return was filed." Nicholas' position, for which it offers no authority, is contrary to the principle that the IRS lacks authority to refund or credit a taxpayer's account for payments for which recovery or credit is barred by the statute of limitations. *See* 26 U.S.C. § 6402(a); 26 U.S.C. § 6514(a)(1); *see also Heichel v. Commissioner of Internal Revenue*, Nos. 13504–05L, 13505–05L, 13534–05L, 2008 WL 5330808, at *1 (U.S.Tax Ct. Dec. 22, 2008) (overpaid funds which were unavailable for credit toward petitioners' outstanding tax liability because of limitations bar moved to excess collections after IRS received and accepted petitioners' tax return); *Lorusso v. United States*, Civ. A. No. 94–11713–NG, 1996 WL 512319 (D.Mass. June 25, 1996) (whereas IRS initially determined that refund was available based on taxpayer's delinquent return, IRS later determined that such refund was barred by statute of limitations and therefore, such funds were not recovered by taxpayers but were instead credited to an excess collections account).

Taking these conclusions into account, the question is whether or not the undisputed facts support the IRS's 2006 determination that additional taxes were owed by Nicholas for the refund quarters. If so, then Nicholas' April 2007 payment was not an overpayment, but rather simply a payment of taxes legitimately due and owing from Nicholas. In support of its motion for summary judgment, the United States has submitted evidence explaining how and why the IRS determined that Nicholas had insufficient deposit credits to satisfy its outstanding tax liabilities, and further explaining the specific manner in which Nicholas' $263,108.60 was applied to satisfy these liabilities, and to cover penalties and interest. Nicholas has offered no evidence to refute this evidence and hence no basis for this court to conclude that the $263,108.63 payment was an overpayment, in whole or in part. It follows that Nicholas has failed to demonstrate that it is entitled to a refund of any part of this payment.[13] Conversely, the United States has established that there is no overpayment available to be refunded.

Nicholas argues, though, that even if it might otherwise be precluded on the basis of the United States' limitation-based arguments from obtaining a refund, the court should hold the United States is precluded from challenging the company's claim for refund in light of the fact that the IRS's own agent, auditor Howard Adams, sent Nicholas a "no change" letter in October 2004, in which he reported that the examination of Nicholas' tax returns from the third quarter 1999 through the fourth quarter of 2003 had been complet-ed, and that he had made "no changes in the tax you reported on these returns." Nicholas suggests that since its 941 returns reported not only the amount of its tax liability for the respective tax periods covered but also the amount of deposits remitted for each of these periods, then Adams' "no change" letter strongly tends to indicate that he believed that Nicholas had satisfied its filing and deposit/payment obligations for the tax periods covered by the returns. In effect, Nicholas contends that the United States should be estopped from relying on the statute of limitations in defending Nicholas' refund claim. In the court's opinion, there is no arguable merit to Nicholas' position on this issue.

In response to Nicholas' argument, the United States notes, first, that Adams was a revenue agent in the Examination Division who was only responsible for determining the amounts of the liabilities Nicholas reported on its Forms 941 were accurate; he was not responsible for determining whether those liabilities had been satisfied. Indeed, the "no change" letter prepared by Adams, in which he indicated that the IRS had not found any inaccuracies in the amounts of the Form 941 liabilities reported on Nicholas' returns, did not address whether unpaid balances for these liabilities remained due and owing from Nicholas. The United States further argues that Nicholas cannot prove the essential elements of estoppel in any event.

A plaintiff seeking to prove estoppel against the IRS must prove affirmative misconduct by the government as well

---

**13.** Nicholas has strenuously objected to what it characterizes as the arbitrary manner in which the IRS "transferred funds retroactively and prospectively between tax periods." However, it has not shown that the manner in which the IRS credited payments to Nicholas' accounts was contrary to the IRS's authority or was otherwise arbitrary. *Cf. Heichel,* 2008 WL 5330808, at *2 ("A taxpayer does not control the treatment and application of funds remitted to respondent involuntarily. Rather, respondent is permitted to treat funds involuntarily remitted as a payment of taxes and to apply the funds to any tax liability respondent sees fit.").

as the four traditional elements of estoppel, namely, that "(1) the party to be estopped was aware of the facts, and (2) intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury." *Internal Revenue Service v. Taylor*, 132 F.3d 256, 263 (5th Cir.1998) (citation omitted). Moreover, "[r]eliance on the erroneous advice of an IRS agent will not support a finding of equitable estoppel that justifies depriving the Treasury of funds for which the relevant statutes do not authorize disbursement." *Valley Ice & Fuel Company, Inc. v. United States*, 30 F.3d 635, 639 n. 8 (5th Cir.1994). Nicholas has offered no evidence that Adams intended that his "no change" letter be acted on. Neither has it shown that it relied on Adams' letter to its injury. The fact is, by the time Adams issued the "no change" letter, the limitations period had already run, and there was nothing Nicholas could have done to change that fact, or to avoid the IRS's subsequent assessment of taxes against Nicholas as a result of the limitations period having run. Finally, Nicholas has neither claimed nor attempted to show that Adams engaged in any affirmative conduct whatsoever. On the contrary, David Nicholas and Nicholas bookkeeper Bonnie McMillan have both testified they were aware of no affirmative misconduct by Adams. Accordingly, Nicholas' estoppel argument is rejected.

■ Nicholas has contended, in the further alternative, that the court should abate $62,838.35 in penalties on the basis that reasonable cause exists for Bonnie McMillan's failure to timely file Nicholas' 941 returns from the third quarter of 1999 through the fourth quarter of 2003. The law is clear that failure to file a timely income tax return results in interest charges and additional penalties "unless it is shown that such failure is due to reason-able cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1). As the Supreme Court has stated, "[t]o escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.' " *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). According to Nicholas, during the periods in question, McMillan suffered through an unspecified personal crisis which caused her to lose focus and which substantially affected her ability to properly perform her many tasks as an employee of Nicholas, including filing the Forms 941, until May 11, 2004. In the court's opinion, Nicholas has failed to sustain its heavy burden to establish reasonable cause.

■ The fact that Nicholas' in-house bookkeeper experienced a personal crisis clearly does not constitute reasonable cause for *Nicholas'* failure to timely file its tax returns. As the United States points out, the responsibility for insuring that a tax return is timely filed and the tax is timely paid is that of the taxpayer, and the taxpayer's reliance on others to fulfill these responsibilities will not establish reasonable cause to avoid penalties based upon the taxpayer's failure to meet its responsibilities. Thus, Nicholas' reasonable cause defense fails as a matter of law. *See United States v. Boyle*, 469 U.S. 241, 251–52, 105 S.Ct. 687, 693, 83 L.Ed.2d 622 (1985) (stating, "[O]ne does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due ... It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing ...").

Based on all of the foregoing, it is ordered that the United States' motion for summary judgment should be granted and Nicholas' motion for summary judgment should be denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.